In the Matter of the Estate of PETER A. H. JACKSON, Deceased.

Surrogate's Court, New York County, December 18, 1940.

*Louis C. Whiton,* for Stephen H. Jackson, as sole surviving executor·and trustee.

*Brown, Brenton & Watts,* for the Bank of New York, as executor and trustee of the estate of Esther Hull Tremain, deceased.

*DeForest & Elder,* for The Presbyterian Hospital in the City of New York.

*Kobbé, Thatcher, Frederick & Hoar,* for The Roosevelt Hospital.

*Alvaro J. Adams,* for Diana A. Jackson, as administratrix, etc., of Henry H. Jackson, deceased, and for Diana A. Tucker, Henry H. Jackson and C. Tremain Jackson.

*Davies, Auerbach, Cornell & Hardy,* for the Irving Trust Company, as trustee of the trust created under the will of Adrian H. Jackson, deceased.

DELEHANTY, S. In these consolidated proceedings for a construction of the will of deceased, the questions raised involve the validity of the exercise of a power of appointment. One of the petitioners will share in a portion of the fund if the power was validly exercised. The cross-petitioners will share under the donor's will in the appointive fund if the power of appointment was not validly exercised.

The testator died on April 15, 1895. He was survived by five children. He left a will dated March 9, 1887, and a codicil dated January 17, 1893. By his will he created separate trusts for each of his five children for their respective lives. The remainder of each trust was disposed of in the following language: " Upon the death of each life tenant, the said one-fifth of my property, the income of which fifth part is above given to such life tenant, shall go to and is hereby devised to the children and heirs at law of such life tenant in equal shares *per stirpes* (not *per capita*)."

The second paragraph of the codicil provides:

" *Second.* I empower each of my said children who shall survive me by or through his or her last will or testament duly executed in accordance with the laws of the State of New York to direct or appoint the disposition upon his or her decease of the share of my estate which theretofore have been held in trust for his or her life use or for any part or parts of such share provided however that this disposition shall be to such and in such sums or proportions among my then living lineal descendants and the Presbyterian Hospital (of which John S. Kennedy is now President) and the Roosevelt Hospital (of which John M. Knox is now President) as the child so making the direction or appointment may deem proper. And a testamentary appointment thus made by

either of my children in so far as operative shall upon his or her decease take the place of the provisions of my will with reference to the then disposition of the share to which the same shall be applicable. And in giving this power to my several children I confide in their discretion and sense of justice and propriety with the hope that the power will be exercised (if at all) in favor of my lineal descendants or some or one of them unless there shall exist reasons appealing to their sound judgment for a different exercise of the same."

The fourth paragraph of the codicil provides:

"*Fourth.* Upon the decease of each of my said children in case he or she shall leave no lawful issue him or her surviving it is my will and direction that the share theretofore held in trust for his or her life use in so far as not effectually disposed of by his or her testamentary direction or appointment shall go and be paid over or transferred absolutely and in fee to my other then living children and to the then living lawful issue of any child of mine theretofore deceased provided however that such issue of a deceased child shall in any case take *per stirpes* only the share which their parent would have taken if living. And it is my confident hope that either of my children thus acquiring in fee during life any portion of my estate will possess and manage the same discreetly and with due reference to the advantage of shares remaining in trust and in the final disposition thereof will bear in mind the welfare and prosperity of my family."

The last sentence of the fifth paragraph of the codicil provides: "And the expression by me in this codicil of a request or hope is not to be construed as an obligatory requirement restricting estates, rights or powers otherwise conferred by me."

A daughter of deceased purported to exercise her power of appointment by the fifth paragraph of her will. This provides:

"*Fifth.* I devise and bequeath all of the rest, residue and remainder of the property held in trust for me under the last will and testament of my father, Peter A. H. Jackson, deceased, which property I am entitled to designate and appoint under the will of my father, to my Trustees hereinafter named as follows:

"(a) I bequeath Fifty thousand dollars ($50,000) thereof to my Trustees, in trust, to hold, invest, and reinvest the same and pay the net income thereof to my brother, Stephen Hull Jackson, during the term of his natural life. Upon his death I direct my Trustees to terminate said trust for his benefit and transfer the principal thereof, together with any accumulated income, to the charitable trust in memory of my father, Peter A. H. Jackson, and my mother, Esther Hull Jackson, established in and by paragraph ' (c) ' of this Article of my will, in augmentation thereof.

" (b) I bequeath Fifty thousand dollars ($50,000) thereof to my Trustees, in trust, to hold, invest and reinvest the same and pay the net income thereof to my sister, Abigail Hull Louderback, during the term of her natural life. I especially request of my sister that she use said income for herself exclusively. Upon her death I direct my Trustees to terminate said trust for her benefit and transfer the principal thereof, together with any accumulated income, to the charitable trust in memory of my husband, Hon. Charles Tremain, established in and by paragraph ' (d) ' of this Article of my will, in augmentation thereof.

" (c) I devise and bequeath one-half of the remainder of said property (or should my brother, Stephen Hull Jackson, predecease me, one-half of the remainder of said property and the share herein-above bequeathed to him in subdivision ' (a) ' of this Article), to my Trustees hereinafter named and the successors thereof, in trust, nevertheless, for the following uses and purposes: I direct my Trustees to hold, invest, and reinvest said property and collect and receive the income thereof, and pay the net income in per-petuity to the Presbyterian Hospital in the City of New York, which said income shall be used by said hospital for the purpose of maintaining a ward of approximately four beds for the care of American-born or naturalized sick, crippled, or disabled poor of the City of New York who cannot afford proper medical or surgical care and treatment. Said gift is made in memory of my father and mother and is to be known as the ' Peter A. H. Jackson and Esther Hull Jackson Memorial Trust for Charitable Purposes.' It is my wish that said hospital shall affix a small plate over the door of the ward with the following inscription: ' Endowed by Esther Hull Tremain in memory of her father, Peter A. H. Jackson, and her mother, Esther Hull Jackson.'

" (d) I devise and bequeath one-half of the remainder of said property (or should my sister, Abigall Hull Louderback, predecease me, one-half of the remainder of said property and the share herein-above bequeathed to her in subdivision ' (b) ' of this Article), to my Trustees hereinafter named and the successors thereof, in trust, nevertheless, for the following uses and purpses: I direct my Trustees to hold, invest, and reinvest the same and collect and receive the income thereof, and pay the net income in perpetuity to The Roosevelt Hospital in the City of New York, which said income shall be used by said hospital for the purpose of main-taining a ward of approximately four beds for the care of American-born or naturalized sick, crippled, or disabled poor of the City of New York who cannot afford proper medical or surgical care and treatment. Said gift is made in memory of my husband and is to

be known as the ' Hon. Charles Tremain Memorial Trust for Charitable Purposes.' It is my wish that said hospital shall affix a small plate over the door of the ward with the following inscription: ' Endowed by Esther Hull Tremain in memory of her husband, Hon. Charles Tremain.'

" Should either of the aforesaid hospitals at any time for any reason cease to exist or to be conducted as a hospital for charitable uses and purposes, such as is contemplated by the laws and statutes of the State of New York under which trusts in perpetuity may be lawfully established, I direct my trustees to hold said property set apart for such hospital in trust for the benefit of the surviving or remaining hospital, and to pay the net income to said hospital in perpetuity for the same charitable purposes. I am confident that said hospitals will gladly accept the bequests herein provided and will continue to exist as hospitals for charitable purposes for years to come; however, if said hospitals should cease to exist or be conducted as hospitals for such charitable purposes, I direct my Trustees to pay over, transfer, and deliver said property to my brother, Stephen Hull Jackson, and my sister, Abigail Hull Louderback, or the survivor, and I so devise and bequeath.

" In exercising the power of appointment vested in me by the will of my father, I am mindful of his wish that the power be exercised in favor of his lineal descendants. After much thought, I have chosen to exercise the power in favor of the two hospitals mentioned by him for the benefit of the sick poor of the City of New York in perpetuity, as there are so many poor in need of medical care and treatment.

" I do not wish any of my nieces and nephews to participate in my estate and I have therefore intentionally omitted them from my will. They have sufficient property of their own or have already been amply provided for."

In short, the donor authorized the life tenant of each trust to appoint the remainder " to such and in such sums or proportions among [his] then living lineal descendants and the Presbyterian Hospital  *  *  *  and the Roosevelt Hospital  *  *  * as the child  *  *  *  may deem proper." He further said that he gave this power to his children with the hope that the power would be exercised in favor of his lineal descendants. He said that his expression of such request or hope was not to be construed as " an obligatory requirement restricting estates, rights or powers otherwise conferred " by him.

In exercising the power the donee directed the creation of two primary trusts of $50,000 each for the benefit of children of the donor and directed that the remainders of each of these trusts

should be used to augment the trusts for the hospitals for which two equal trusts of the balance of the appointive fund were created. In each instance the property is given to trustees nominated by the donee of the power. In each instance the income is to be paid to the hospitals for the maintenance of a ward for medical care of a specific class of persons. In each instance the donee has provided for the erection of an inscription on the door to the effect that the ward is endowed by her. The donee has further provided that if both hospitals should cease to exist as charitable organizations the corpus of the trust should be paid to the brother and sister of the donee or to the survivor of them. Every person who is named a beneficiary of an interest in the appointed property is within the group of appointees permitted under the power.

There are two main issues. The first is whether the grant of power to appoint includes the power to appoint in trust. The second is whether, if an appointment in trust is permitted under the power, the purported exercise of the power is invalid because the provisions of the donee's will exceed the limits of the power. The first issue goes to the fundamentals of the donor's plan. The second involves consideration of the nature of the trusts for the hospitals in that separate trustees are appointed, of the fact that the hospitals are to receive only the income from the property and of the fact that the purposes for which the income is to be used by the hospitals are limited and may be impossible of execution. This second basis of attack requires consideration also of the rule against remoteness of vesting since if both the hospitals should cease to exist as charitable corporations the remainder is given to the brother and sister of the donee.

Great stress is laid on *Matter of Kennedy* (279 N. Y. 255) as supporting the argument that the power was not validly exercised. The court is of the view that this case furnishes no support for that argument. The court in the *Kennedy* case construed the will which granted the power as limiting its operation to an immediately effective and outright apportionment of the property among then ascertained persons. The court held that there was no power to extend the time of vesting. On that construction of the Kennedy will it was necessary to hold that the attempted appointment of the property in further trust was invalid. In the court's opinion lengthy comment is made respecting differences in viewpoint over the canons of construction to be applied to powers. But the decision of the court is made strictly on the basis that the text of the Kennedy will expressly limited the area within which the power could operate. The case is, therefore, merely a case construing a

particular instrument. The actual decision does not set up and does not purport to set up any general standard whatever or to establish or to repudiate any rule of construction whatever. Aside from the specific holding that the particular will there under construction constrained a particular result the case means only that in the construction of a testamentary power the same singularity of approach exists as in the construction of any other portion of a will; and since no will has a brother the *Kennedy* case is illuminating but not controlling in any other case.

Before turning to the particular text of the Jackson will it is useful to look at some other cases in which the particular texts of *inter vivos* instruments or testamentary instruments containing powers have been construed.

In *Beardsley* v. *Hotchkiss* (96 N. Y. 201) an *inter vivos* antenuptial agreement executed by the owner of property reserved a power of appointment by will. The power authorized her by her last will to give and bequeath her personalty to her children " in such shares and proportions " as she deemed proper (p. 218). The argument made in attack upon the purported exercise of the power was that the power authorized only an allotment of personalty in gross sums payable outright. The court said (pp. 218, 219): " She could distribute it in unequal proportions, and she could exclude some of her relatives entirely. She could give one a life estate, another an estate for years, and another a fee; and still each one thus provided for would take a share and proportion. She could carve out of the property as many different estates as the law allows, giving to some life estates or conditional fees, and to others remainders, vested or contingent, and the property would be thus quite as effectually and really divided into shares as if absolutely physical division of the property were made among the objects of her bounty." The court quoted with approval (p. 219) from Sugden on Powers as follows: " ' A power to appoint a fund in such *proportions* as a party shall think fit, implies that he may apportion it out in such manner as he pleases; consequently he may give one interest for life in a particular share to one child, or limit the capital of the same share to another, or even go so far as to limit to a third child upon a contingency, provided he doles out the whole in this various way among all the children only. The power does not require that he should distribute it in *gross* sums, and give each child an absolute interest in that gross sum, for such a power enables the gift of particular interests, and the appointment of such interests; and a general power to apportion lands receives the same construction; therefore life estates or rent charges may, in like manner, be given to any of the children.' " (Emphasis in original opinion.)

In *Crooke* v. *County of Kings* (97 N. Y. 421) the will of the donor gave to her daughter the power " to dispose of all and every part and parcel thereof, both real and personal (the real estate in fee simple), by grant or devise, notwithstanding her marriage, and during such marriage and without the consent of her said husband." In commenting on the authority granted by this power the court said (pp. 448, 449): " She could execute the power by giving, selling or devising the property, and she could thus terminate the trust when she came to exercise the power of sale. She was not bound to convey the land in fee-simple; the words in parentheses ' the real estate in fee-simple ' were inserted only to show the extent of the power, the quantity of the estate which she could convey and not to limit the power. She could convey less than a fee, and then the interest not conveyed would pass under the limitations over to her children. So she could convey one interest at one time and another at a subsequent time until she had conveyed the fee-simple, and thus completely executed the power."

In *Matter of Dows* (167 N. Y. 227) the donor directed that property held during his son's life for the latter's benefit should on the latter's death " vest absolutely, and at once, in such of his children him surviving, and the issue of his deceased children as he may by his last will and testament designate and appoint, and in such manner, and upon such terms as he may legally impose." The donee's exercise of the power by his will purported to give each of his sons the income only on one-third of the property with the principal of each son's share to another of the donee's sons. Thus each son received one-third of the property absolutely but received it by an income interest in one particular share and a remainder interest in another. The court was dealing with a question of taxation. It said (pp. 232, 233): " Practically each son of David Dows, Jr., is bequeathed one-third of the fund absolutely, with the time of enjoyment in possession postponed. What motive dictated the curious shifting of remainders found in the will of David Dows, Jr., we do not know, nor is it necessary that we speculate thereon. We shall treat these remainders as they are given in the will, that is, each at the termination of a life estate in another party. Still, under the statute, it is plain that they are presently taxable." In reaching this result the court necessarily held that there was a valid exercise of the power.

In *Matter of Cooksey* (182 N. Y. 92) the will of the donor empowered his daughter, the life beneficiary of a trust, to appoint the remainder interest to her children or the issue of her children as she by her " last will and testament shall designate and appoint and in such manner and upon such terms as * * * she may

legally impose." The will of the donor provided a scheme of disposition of the remainder in the event the donee died intestate. Again the court was dealing with a tax question. It said (p. 98): "Again, as we have seen, under the will of Mrs. Cooksey, in exercising the power of appointment she made material changes with reference to paying over the remainder to her children from that incorporated in the will of her father. While each of her children may ultimately receive the same amount, yet she, by her will, fixes definitely the amounts that shall be paid to each of her children upon their arriving at the ages of twenty-one and twenty-five years, leaving no discretion in the trustees as to the amounts that shall be paid over to them, and then vests in the trustees the discretionary power to determine how much shall be used for the support and education of the children during their minority. It appears to us, therefore, that there was a necessity for exercising the power, that it cannot be treated as a nullity, and that, therefore, the transfer tax under the statute was properly assessed." Of necessity the court held that the power was validly exercised when it reached the result just stated.

In *Monjo* v. *Woodhouse* (185 N. Y. 295) the court had for construction a will purporting to execute a power granted by a donor's will wherein he gave to his wife, the donee, "full power and authority" to devise certain real property to any or all of the children or grandchildren, or both, of the couple "in such shares or proportions" as to the wife might seem best. In exercising this power by her will the wife gave a one-fifth interest in the realty to a granddaughter but made it subject to a charge which required payment by the appointee of an indebtedness of a son of the donee to her. The payments required by the charge were to become part of the donee's residuary estate. In construing this purported exercise of the power the court said (pp. 299, 300):

"The narrow question, therefore, is whether a person having the power by appointment to divide and distribute real estate amongst certain people may accomplish such division and distribution by appointing real estate to one object of the power upon condition of payment of a certain sum to other objects. While this question does not seem definitely to have been settled in this country, it has long been held in England that such a course may be pursued, and we see no reason for not adopting the rule there laid down, that real estate may be appointed to one subject to a charge by way of payment of money in favor of another. (Farwell on Powers [2d ed.], p. 320; *Roberts* v. *Dixwell*, 2 Sug. on Powers, 570; *Ricketts* v. *Loftus*, 4 Y. & C. Ex. 519; *Thwaytes* v. *Dye*, 2 Vern. 80; *Long* v. *Long*, 5 Ves. 445.)

" It has even been held in England that the power to appoint real estate gives the power to sell and appoint the proceeds. ( *Kenworthy* v. *Bate*, 6 Ves. 793.)

" While this latter doctrine has been denied in this country (*Stephenson* v. *Richardson*, 88 Pa. St. 40; *Alley* v. *Lawrence*, 12 Gray, 373), we do not regard such denial as involving or impairing the power to make an appointment subject to a charge, and which is less a departure from the simple and strict exercise of the power to appoint the real estate."

Decisions in the intermediate appellate courts of this State have approved constructions of particular instruments to substantially the same effect. In *McLean* v. *McLean* (174 App. Div. 152; affd., 223 N. Y. 695) the court (p. 157) said: " Although counsel questions the right to create by appointment merely a life estate, when the testator's power extended to appointing the fee, we think there is no ground for such objection." This case is commented on in *Matter of Kennedy* (*supra*) as being there not in point. In *Cheever* v. *Cheever* (172 App. Div. 353) the court quoted with approval from *Butler* v. *Huestis* (68 Ill. 594; 18 Am. Rep. 589) which says expressly that the power to appoint a fee includes a power to appoint a lesser estate. In *Maitland* v. *Baldwin* (70 Hun, 267) the power was to appoint " in such manner and form " as the donee might " direct, limit and appoint." Despite objection it was expressly held that the donee had a power to appoint in trust. In *Lehman* v. *Spicer* (108 Misc. 721; affd., 188 App. Div. 931) a general power to appoint " in such sums or amounts " as the donee desired was held sufficient to authorize an appointment in trust. Text writers and courts in other jurisdictions concur in holding that the general power to appoint a fee includes a power to appoint a lesser estate. (Restatement of the Law of Property, § 481; Sugden on Powers [8th Am. ed.], 412; Farwell on Powers [3d ed. 1916], p. 369; 49 C. J. p. 1267, § 56; *Wilmington Trust Co.* v. *Wilmington Trust Co.*, —— Del. ——; 15 A. [2d] 153; *Regents of the University System* v. *Trust Company of Georgia* 186 Ga. 498; 198 S. E. 345; *Matter of McClellan*, 221 Penn. St. 261; 70 A. 737; *Old Colony Trust Co.* v. *Richardson* 297 Mass. 147; 7 N. E. [2d] 432; *Guild* v. *City of Newark*, 87 N. J. Eq. 38; 99 A. 120; *Matter of Lewis*, 269 Penn. St. 379; 112 A. 454.)

Turning now to the particular text which is here to be construed we see that the will of this donor grants the power to dispose of the property here in controversy " to such and in such sums and proportions " as the donee " may deem proper." Deceased says in the last sentence of the fifth paragraph of his codicil that his expressed wishes as to identity of beneficiaries were not to restrict

" estates, rights and powers otherwise conferred by " him. The text of the codicil is held by this court to contain a grant of a general power; and is held by this court to empower the donee to make a grant of an estate less than outright ownership. In view of this ruling it is necessary to consider the attacks which have been made upon the power in anticipation of a ruling that the power permits the appointment of an estate less than a fee.

The first attack is upon the ultimate gift of the remainder to the brother and sister of the donee in the event that the charities should cease to exist as such. If it be conceded that this provision is invalid because of the rule against remoteness of vesting it may be excised without affecting an otherwise valid exercise of the power. (*McLean* v. *McLean, supra; Monjo* v. *Woodhouse, supra.*) This alleged defect is held not to void the exercise of the power.

Substantial attack on the validity of the appointment is made because of the method of administration of the charitable trusts. It should be said parenthetically that the $50,000 trusts erected pursuant to subdivisions (a) and (b) of paragraph fifth of the donee's will are plainly valid and need no further consideration. In attack upon the remainder of the appointment it is argued that neither charitable beneficiary has received a gift of the principal and hence neither is the owner of the property. Stress is laid upon the fact that the directed labeling of the wards is contrary to the fact. Further stress is laid upon what is said to be the restrictive character of the group entitled to benefit. Attack is made, too, on the powers conferred on the trustees. Arguing from the bases thus stated those asserting invalidity contend that the trust must be administered, if at all, according to the terms of the will (*St. Joseph's Hospital* v. *Bennett,* 281 N. Y. 115); and that the *cy pres* doctrine cannot be applied to save the gift. (*Matter of Fletcher,* 280 N. Y. 86.) The case last cited is not authority here since there is here no valid gift over. It was the existence of that valid gift over which controlled the decision in *Matter of Fletcher* (*supra*).

The text of the will of the donee which purports to describe how the gift is to be known and what shall be the inscription on a plate over the door of the ward are not of the substance of the gift. So far as the affixing of the plate is concerned the provision is merely precatory and not obligatory. So far as the remainder of the criticized provision is concerned it is nothing more than a declaration of the donee and does not in any wise affect the property rights granted.

The attack upon the gift because limited to too narrow a group of persons is entirely without substance. The only persons who are excluded from possible benefit are non-naturalized alien resi-

dents of the city of New York. The United States census of aliens now being taken has already established that in the whole of these United States there are approximately 4,000,000 aliens. In the city of New York there are over 7,000,000 residents out of a total of 130,000,000 in the whole United States. Even if it be assumed that the non-naturalized aliens in this city are ten per cent of its population rather than the three per cent characteristic of the nation as a whole, there remains a population group of more than 6,000,000 persons in the city of New York any one of whom may receive medical and surgical care under this gift if unable to pay for it himself. A benefit available to so wide a group is truly charitable and is not subject to the criticism made about it.

While the title to the property is vested in the trustees named in the will of deceased and not in the beneficiaries of income (*Bird* v. *Merklee*, 144 N. Y. 544; *Matter of Griffin*, 167 id. 71), the beneficiaries are entitled to the whole of the net income in perpetuity. The hospitals are organized to render a service which according to human experience will be necessary in perpetuity so long as men are subject to human ills. There is no single difference in result to the beneficiaries of income in a monetary way than would exist if the fund had been given to the hospitals directly " to be held as an endowment fund and the income used for the " benefit of the sick poor of the same class. (*St. Joseph's Hospital* v. *Bennett, supra*, p. 118.) If it be conceived that anything of value remains it passes under the will of the donor as unappointed property. The powers granted to the trustees in respect of investments and the holding of securities are broad but their exercise is subject to review by the court. The court finds no reason to hold that the grant of such authority to the trustees invalidates the exercise of the power.

Some minor questions remain for comment. One of the sons of deceased who had a power of appointment over a portion of deceased's property died intestate leaving three children. Such children succeed to the property. Another of deceased's sons died without issue. He left a will in which he expressly refrained from any exercise of the power granted to him. Under deceased's will the remainder of this son's trust passes to the surviving children of deceased and to the issue of deceased's children, *per stirpes*. The fourth paragraph of the will of Esther Hull Tremain purports to devise realty owned outright by the donee and realty which the donee claimed the right to appoint under the will of Peter A. H. Jackson. There is no dispute that the appointment is effective if the property subject to appointment included any interest in the three parcels of real estate listed in paragraph fourth of the donee's will. It is not conceded that such interest did exist but in any

event the will of the donee is construed to be effective as an appointment thereof if there was any interest in the property upon which the power of appointment could operate.

The construction of the will of deceased, and of the will of Esther Hull Tremain so far as it purported to exercise the power granted to her by deceased, will affect the action to be taken on the objections heretofore filed to the account. Such objections will be heard by the court on the 15th day of January, 1941, at ten o'clock A. M. When the objections are disposed of a decree construing the will in accordance with this decision and settling the account in accordance with the rulings to be made on the objections will be in order.