In the Matter of the Judicial Settlement of the Account of Proceedings of UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee for MICHAEL HART under the Will of BENJAMIN HART, Deceased, and for a Construction.*

EDWARD S. MORRISON, THE SOCIETY FOR THE RELIEF OF THE DESTITUTE BLIND, etc., SISTERS OF THE POOR OF ST. FRANCIS, ST. JOSEPH'S HOSPITAL FOR CONSUMPTIVES, NEW YORK SOCIETY FOR THE RELIEF OF THE RUPTURED AND CRIPPLED, THE HOME FOR AGED AND INFIRM HEBREWS OF NEW YORK, HOSPITAL FOR JOINT DISEASES, WASHINGTON SQUARE HOME FOR FRIENDLESS GIRLS, HOME FOR INCURABLES, Appellants; UNITED STATES TRUST COMPANY OF NEW YORK, Executor of MARTHA HART, Deceased, UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee for MICHAEL HART under the Will of BENJAMIN HART, Deceased, NEW YORK STATE TAX COMMISSION, CHARLES BREASTED, BENJAMIN HART, ISABEL LUCCHESI HART GUILLEMIN, and BENJAMIN C. LODER, as Administrator C. T. A. of IDA M. BROWN, Deceased, Respondents.

First Department, June 27, 1941.

*Francis T. P. Plimpton* of counsel [*Thomas T. Richmond* with him on the brief; *Debevoise, Stevenson, Plimpton & Page*, attorneys], for the appellant Edward S. Morrison.

---

* Modfg. and affg. 172 Misc. 453.

Cornelius W. Wickersham of counsel [Sidney P. Henshaw, Herbert W. Haldenstein, David Dow and John W. Herz with him on the brief; Cadwalader, Wickersham & Taft, attorneys for the appellant Washington Square Home for Friendless Girls; Wolf & Kohn, attorneys for the appellant The Home for Aged and Infirm Hebrews of New York; Emmet, Marvin & Martin, attorneys for the appellant Home for Incurables; Amend & Amend, attorneys for the appellants Sisters of the Poor of St. Francis and St. Joseph's Hospital for Consumptives; Heywood & Benedict, attorneys for the appellant The Society for the Relief of the Destitute Blind in the city of New York, etc.; James J. Mennis, attorney for the appellant New York Society for the Relief of the Ruptured and Crippled; and Oscar S. Rosner, attorney for the appellant Hospital for Joint Diseases], for the appellants.

Samuel Seabury of counsel [Charles S. Guggenheimer, Abraham Shamos and Mitchell Salem Fisher with him on the brief; Guggenheimer & Untermyer, attorneys], for the respondent United States Trust Company, as executor, etc.

MARTIN, P. J. Benjamin Hart died May 11, 1908. By his will he left the residue of his estate in trust. The income of the trust was payable to his nephew, Michael Hart, during his life. This nephew was given power to dispose of the principal of the trust by his last will and testament. The language conferring the power is found in the eleventh clause of the will of the donor, and is as follows: " from and immediately after the death of my said nephew, then to grant, convey, assign and pay over the corpus or principal of the trust estate from which my said nephew was in his lifetime entitled to receive the income to such person or persons and in such manner and in such shares as he shall by his Last Will and Testament in writing appoint in fee simple absolutely."

The donee, Michael Hart, died April 27, 1936. By his will he made it clear that he was exercising the power of appointment. He set up a trust of the residue of his estate to be disposed of as follows: " to apply the net income therefrom to the use of my wife Martha Hart during her life; and upon her death I give, devise and bequeath the principal of the trust estate One-half (½) to Edward S. Morrison, son of my late cousin Edward Morrison, if living, or if he be then dead to his issue then living per stirpes; and the other half, or the whole thereof if neither Edward S. Morrison nor issue of his be then living to the Eight (8) institutions mentioned in paragraph Tenth hereof in equal shares."

In the sixteenth paragraph of his will the donee provided that if any provision of his will should be ineffective to dispose of his

estate or the property over which he had the power of appointment, then the property invalidly disposed of should go to his wife " absolutely in fee simple." The surrogate has held that the donee was limited to the appointment of the property in fee, that the attempt to create a trust of the appointive property transcends the power and is invalid, and that the alternative appointment to the widow becomes effective.

The intent of the donor must be found in the language of his will. Benjamin Hart authorized his nephew to dispose of the principal of the trust estate " to such person or persons," " in such manner " and " in such shares " as the nephew might appoint by his will. By this authorization the donor manifested complete indifference to the beneficiary or beneficiaries of the donee's exercise of the power. We do not find this indifference qualified by concern about the nature of the estate given to such beneficiary or beneficiaries. The donor authorized disposal " in such manner " as the donee directed. The phrase, " in such manner," has been held to refer to the character of the estate which the donee may appoint, and connotes positive permission to the donee to create trusts. In 1 Sugden on Powers [3d Am. ed.] (p. 524) it is said: " * * * and the word *manner*, or any word of the like effect may well be construed in favour of the intention to mean, in such mode, *as to the quantity of the estate to be given*, as the donee shall think fit."

In *Maitland* v. *Baldwin* (70 Hun, 267) a will contained the following provision: " At the death of my wife I give $50,000 in such manner and form and to such person or persons as she by her last will and testament may direct, limit and appoint." The wife survived the testator, and at her death left a will in which she directed and appointed her executor to receive the sum referred to in the above provision of her late husband's will and to invest the same and to pay one-fifth of the income to each of five several persons named, during their respective lives; and after the death of certain of such beneficiaries, she appointed other persons to receive their respective shares of income for life. It was held that the power of appointment was not limited to a direct and absolute gift, but permitted the wife, in exercising it in her will, to place limitations upon the absoluteness of the enjoyment within the restrictions prescribed by law. The court said:

" The gift is not to such person or persons as she may appoint simply, but it is a gift ' in such manner and form and to such person or persons as she by her last will and testament may direct, limit and appoint;' thus giving the appointee, within the limits of the law, the right to designate the manner and form in which the

appointment shall be made, and necessarily the manner and form of the enjoyment under the appointment.

"It would seem, therefore, that under such a general power conferred by the will, it cannot be said that the power of appointment is limited to a direct and absolute gift, but the person exercising the power may place limitations upon the absoluteness of the enjoyment within the restrictions prescribed by the law."

We do not read the phrase, "in fee simple absolutely," appearing in clause eleventh of the donor's will, as an indication of an intention to restrict, but, on the contrary, as an expression of his intention to broaden and strengthen the unlimited power given to the donee. The donor used the phrase, "in fee simple absolutely," a second time in the eleventh clause of his will, and he also used it in article two of the third codicil. In each of these two instances the phrase is used in connection with the verb "convey." We are of the opinion that, in using the expression "in fee simple absolutely," the donor had reference to the nature of the conveyance rather than to the extent of the appointment.

In *Crooke* v. *County of Kings* (97 N. Y. 421) the donee was given power to dispose of all of the trust estate, "both real and personal (the real estate in fee simple)." With reference to the phrase inclosed in parentheses, the court said that the donor must have understood that there were a multitude of ways in which the estate could be disposed of by will, and, with that knowledge, she left the donee free to choose any lawful disposition from among them, and authorized such disposition in all its details. The donee appointed a trust. The court said: "Mrs. Crooke [the donee] was empowered to dispose of the estate as if she was owner; to do that to the extent of the entire fee simple; she did so in a lawful and appropriate manner; it was within her authority which, therefore, was well executed."

In Farwell on Powers ([3d ed.] p. 368) it is said: "A power to appoint the fee authorizes the appointment of any smaller interest (*Bovey* v. *Smith*, 1 Vern. 84), and also of any legal limitations within the scope of the power, which may be served out of the fee (*Crozier* v. *Crozier*, 3 Dr. & War. 353, 370)."

In *Cheever* v. *Cheever* (172 App. Div. 353) there was involved the construction of two powers of appointment. In the first the trustee was directed "to pay over and divide the said two hundred and fifty shares of stock, or the proceeds thereof, to and among such person or persons as the said John D. Cheever may by his last will and testament, duly proved and admitted to probate, give and bequeath the same specifically."

The second power added the phrase, " and in such proportions." In holding that the donee had properly exercised the powers by creating trusts, this court said:

" The powers of appointment given in each deed of trust are substantially alike, and are general beneficial powers under which the grantee was authorized to dispose absolutely by will of the property embraced in the trust deeds to any person whomsoever. (*Cutting* v. *Cutting*, 86 N. Y. 522.) In Sugden on Powers (3d Am. ed. p. 535) it is said ' that although the power must not be exceeded, nor its directions evaded, yet where there is no prohibition, everything which is legal, and within the limits of the authority should be supported; and therefore that a power to appoint a fee, but with no prohibition against giving a less estate, ought to be held to authorize any legal limitations within the scope of the power which may be served out of the fee.'

" In *Butler* v. *Huestis* (68 Ill. 594) it is said: ' The law seems to be well settled by authority, where a party has the power to appoint a fee, if there are no words of positive restriction a less estate may be appointed.'

" The same principle is laid down in *Beardsley* v. *Hotchkiss* (96 N. Y. 201, 218, 219) and *Matter of Lawrence's Estate* (136 Penn. St. 354). The arguments of the learned counsel for the plaintiff are applicable to limited or special powers. It follows that the powers of appointment were validly exercised by the creation of the trusts under the will of John D. Cheever. \* \* \* "

The learned surrogate has relied on *Matter of Kennedy* (279 N. Y. 255) as authority for his holding that the donee was limited to an appointment of the property in fee. That case must be confined to the facts there presented. A consideration of the facts in *Matter of Kennedy* justifies a conclusion that by its holding the Court of Appeals did not intend to jettison the well-understood rule that the power to appoint a fee includes the power to appoint a lesser estate. In the *Kennedy* case the testator left a will in which he bequeathed one-half of his residuary estate to his trustee to pay the income to his daughter, Lady Dunbar, " for and during the term of her natural life, without power of anticipation. Upon her death, to pay and divide the principal of said share to and among such of her children and issue of deceased children as she shall by her Last Will and Testament appoint; and if my said daughter shall fail effectually to exercise such power of appointment the principal of said share shall be transferred to and divided among her child or children, if any, in equal shares *per stirpes*."

This power of appointment was a special and limited power and under it Lady Dunbar could appoint only to her children and

issue of deceased children. The Court of Appeals held that Lady Dunbar was limited in her appointments to members of the class " children and issue of deceased children," that the class closed at Lady Dunbar's death, that at her death her two infant children who had no issue were the only members of the class and that consequently there were no issue of deceased children. Lady Dunbar, however, had left a will purporting to exercise the special power of appointment. She divided the appointed fund into two equal parts, one for each of her children. The son's part she directed her trustees to hold in trust during the life of her son and to pay to him the income therefrom, and after his death to pay and divide the principal among the children of her son then living in such shares as her son should appoint, and in default of such appointment, to pay the principal to the child or children of her son then living or, if none then living, to her daughter Marjorie. There was a parallel provision in relation to the daughter's share. This attempted exercise of the power obviously included beneficiaries who were not members of the class at the death of Lady Dunbar and accordingly was void.

There was a second issue in the case, namely, whether the unsupported trust estates for the son and daughter could be upheld *pro tanto* as a partial exercise of the power. The argument was made that, under the law, the power conferred on a donee to appoint a fee includes the power to appoint a lesser estate where there is no positive restriction in the donor's will. This argument was disposed of by the Court of Appeals by holding that a partial incomplete exercise of the power was inconsistent with the implications following from other provisions of the will.

The Court of Appeals has frequently stated that the language used in an opinion, though it may appear general in scope, must always be taken with reference to the particular facts decided. We find nothing in the facts of the *Kennedy* case to justify the conclusion that the old rule of construction has been declared abandoned by the Court of Appeals under all circumstances. The Court of Appeals merely held the rule inapplicable to the particular state of facts then before it.

In *Matter of Wildenburg* (174 Misc. 503) the surrogate whose decree is now under consideration has apparently modified his interpretation of *Matter of Kennedy* as applied to the case at bar. *Matter of Hart* (172 Misc. 453) is also commented upon in 53 Harvard Law Review (p. 687) and 24 Minnesota Law Review (p. 587). We note, also, that the New York County Surrogate's Court in *Matter of Jackson* (175 Misc. 882) and the Kings County Surrogate's Court in *Matter of Comey* (173 id. 377) have both held that *Matter*

*of Kennedy (supra)* should be limited and considered as a case construing a particular instrument.

Ordinarily, a testator's primary concern is as to who is to receive his property. If he is indifferent as to who is to receive it, he would naturally be indifferent as to how they receive it.

Under all circumstances here, we are of the opinion that the donor intended the donee not only to allocate the shares of the principal of the trust estate, but to appoint the quality of the estate and the manner of use thereof as well.

In so far as the decree appealed from provides otherwise, it should be reversed.

O'MALLEY and CALLAHAN, JJ., concur; GLENNON and COHN, JJ., dissent.

Decree modified to the extent indicated in opinion and as so modified affirmed. Settle order on notice.