In the Matter of the Estate of BERNHARD LICHTENSTEIN, Deceased.

Surrogate's Court, New York County, August 12, 1941.

*Mayper, Lazarus & Otten,* for Sally L. Leeds, petitioner.

*Joseph Rosenzweig,* for Beatrice J. Lane, individually and as executrix, etc., of Julius B. Lane, deceased, and as guardian for James L. Lane, an infant.

*Chadbourne, Wallace, Parke & Whiteside,* for Elinor L. Asch, objectant.

*Jerome M. Hirsch,* for the State Tax Commission.

DELEHANTY, S. A surviving trustee of deceased here accounts for her own actions as such trustee and, as one of the executrices of Julius B. Lane, accounts for his actions as cotrustee while he lived. By the petition the accounting trustee asks the court to determine whether Elinor Lane Asch, a daughter of her deceased cotrustee, was and is entitled to have paid to her out of the trust fund a sum of $25,000. In addition the petition asks that if such daughter is declared entitled to the fund the court determine whether it is payable out of the general principal of the trust fund created by the testator for Julius B. Lane or out of the principal of a trust fund, which pursuant to the power granted to him by the testator, Julius B. Lane created for this daughter under his

will. The petition asks further that if it be held that the appointment to his children by Julius B. Lane fails for any reason determination be made whether his daughter is entitled to have paid to her the same sum of $25,000 out of the alternative disposition made by the testator in paragraph tenth of his will. Finally the petition asks determination of the validity of the exercise of the power of appointment granted to Julius B. Lane.

The coexecutrix of the will of Julius B. Lane has filed an answer as such executrix and as an individual and also as testamentary guardian of a child of Julius B. Lane. Her answer prays for a construction of some of the provisions of the will of the testator referred to in the petition. She asks also for a determination whether certain estate taxes are payable out of the estate of the testator or out of the estate of Julius B. Lane; for a determination whether a certain tax deposit made in the Lichtenstein estate suffices to discharge from further tax payment the property operated on by the power of appointment; for determination whether the direction of Julius B. Lane in his will respecting distributions in kind is applicable to property originating in the estate of Bernhard Lichtenstein; and for a determination whether the investment and reinvestment of funds operated on by the power of appointment (if held to have been validly exercised by Julius B. Lane) are governed by the sixth paragraph of the will of Julius B. Lane or by paragraph fifteenth of the will of Bernhard Lichtenstein.

Elinor Lane Asch, in respect of whose claim for $25,000 the petition asks determination, filed an answer containing objections to the account wherein she asserts her right to have this sum paid to her. In her answer she alleges that in fact Julius B. Lane in his lifetime did exercise the right granted by the will of Bernhard Lichtenstein to give to her the sum in controversy.

As matter of convenience the last issue stated will be first determined. Subject to objection certain oral testimony was taken on this issue. The widow of deceased (the person who filed an answer in three capacities as above stated) testified to the quantum of the Julius B. Lane estate outside the appointive property. She also recited the personal benefits accruing to her under life insurance policies on the life of Julius B. Lane of which she was the named beneficiary. The accounting surviving trustee of Bernhard Lichtenstein testified that the objecting daughter of Julius B. Lane married in 1939 with his consent and that the latter shortly before the marriage expressed his happiness at the prospective marriage. She quoted him as having said that he intended to give to his daughter only the interest on the $25,000 fund and that he was not going to give the principal to her. She quoted him also as having

said at a later occasion that his daughter was entirely satisfied with this arrangement. Quoting still another talk with Julius B. Lane she represented him as having said that when the assets in the estate of Bernhard Lichtenstein had been liquidated he would give his daughter $25,000 outright, if in the interval " the children " (his daughter and her husband) showed that they were careful in their use of money. She testified that the deceased donee never filed with the executors and trustees of Bernhard Lichtenstein any request in writing for the disbursement of this fund.

A motion was made to strike out all of this proof. On the issue of fact presented by the assertion in the answer of Elinor Lane Asch that there was an actual exercise by the donee of his right to give $25,000 to her, the evidence tendered was pertinent. In that aspect of the issues in the proceeding the motion to strike the evidence from the record must be denied. The court, however, holds that the evidence is not pertinent on any other aspect of the issues and has disregarded it in respect of such other issues. The oral proof establishes that in fact no exercise was made by Julius B. Lane of his power to give $25,000 to his daughter.

This fact determination leaves for consideration the question whether or not the power granted to Julius B. Lane by the deceased, Bernhard Lichtenstein, was an imperative power in trust or was a discretionary power. On this point the will of Bernhard Lichtenstein (after saying that should any female child of his son, Julius, marry with the latter's consent) provides: " I give unto my said son the right to give the sum of Twenty-five Thousand ($25,000.00) Dollars, out of the principal of my residuary estate, so set apart in trust for him, as herein set forth, unto such female child so marrying with his consent. And I direct my executors to pay the said amount to such granddaughter, on his written request." Earlier in the will the testator set up two equal residuary trusts for his two children, one of whom was Julius B. Lane. Each child was granted the entire income for life on his share. A power to appoint the principal of the funds held in trust was granted by the ninth paragraph of the testator's will in this text: " I give and grant unto each of my children full power and authority to dispose of the principal of the fund, so held in trust for them, as hereinbefore set forth, by will or other testamentary devise." Julius B. Lane survived his father, qualified as one of his trustees and died on May 2, 1940, without having made any attempt to direct payment out of his own trust to his daughter of the capital sum of $25,000. His will purports to exercise the power of appointment and to dispose of the whole of the trust fund of which he was income beneficiary. It is obvious that any *inter vivos* transfer of $25,000 out of the fund held in trust for Julius B. Lane would operate to deprive the latter per-

manently of any income thereafter accruing on the principal thus paid out. It would also terminate his right to appoint that sum by his will.

It may be said at once that the lack of a written request to the trustees on the part of Julius B. Lane for the appropriation of $25,000 to his daughter has no real importance. If the power is imperative lack of action by the donee cannot defeat the rights of the beneficiary. The sole important question is whether the grant to his son by the testator was intended to *compel* the son to grant his daughter $25,000 if once he assented to the daughter's marriage; or was intended to leave still with his son a discretion whether or not such payment should be made.

Section 157 of the Real Property Law says: " A trust power, unless its execution or non-execution is made expressly to depend on the will of the grantee, is imperative, and imposes a duty on the grantee, the performance of which may be compelled for the benefit of the person interested. A trust power does not cease to be imperative where the grantee has the right to select any, and exclude others, of the persons designated as the beneficiaries of the trust." This text originates in the Revised Statutes. Under familiar authority the testator is deemed to have had it in mind at the time he drew his will. The statutory declaration is that the power is imperative " unless its execution or non-execution is made expressly to depend on the will of the grantee." It has been authoritatively stated in the Court of Appeals (*Smith* v. *Floyd,* 140 N. Y. 337, 341) that if the disposing power " is not coupled with words which expressly, *or by necessary implication,* make the donee the final arbiter of its exercise," (italics supplied) a court to which application is made by the beneficiary must decree the execution of the power. There is in words no express statement by the testator that Julius B. Lane is such final arbiter. The question remains whether the text of the will, " by necessary implication," gave him the discretion to exercise or not to exercise the power. The court finds in the will such " necessary implication " and holds the power to be a discretionary and not an imperative power.

In construing the text of the power it must be read in conjunction with the other text of the will; and the whole must be read against the family background of the parties. It is the general rule that the quality of a gift made in a will is not to be deemed cut down by later text in the will unless no other result is consonant with the later text. (*Banzer* v. *Banzer,* 156 N. Y. 429; *Herzog* v. *Title Guarantee & Trust Co.,* 177 id. 86, 93.) Here income on the *whole* is first given to Julius B. Lane. He is granted this benefit for his *whole life.* He is granted an unrestricted power to dispose

*by his will* of the *whole* of his trust fund. In all but the opportunity for outright consumption of the trust capital there is conferred on Julius B. Lane under the will all the rights of an absolute owner of the fund. A gift so phrased is not to be deemed cut down by $25,000 principal (with consequent loss of income) unless no other view of the text is possible. Then, too, the human element must have been a part of the testator's concept. He cannot have intended his beneficence to furnish opportunity for dissension between his son and his granddaughters. He did not intend that a granddaughter's marriage and the personal suitability of her *fiancé* should be dependent upon the willingness or unwillingness of his son to surrender *at once* and *permanently* a substantial capital sum and the income for life thereon. He did not intend that his granddaughter could litigate a refusal of assent to her marriage if her father (otherwise satisfied with her choice of a husband) wanted to wait and see if she and her husband could use money wisely. Certainly he could not have intended to permit a granddaughter to attack his son for miserliness if the latter in good faith objected to an intended husband of a daughter on valid personal grounds. If such grounds included reasons which a father might be reluctant to discuss with an adolescent daughter she might conclude that her father valued above her happiness his enjoyment of $25,000 and its income. Considered in these aspects, it is the court's view that the power was designed to permit a free and ready assent by his son to any marriage deemed suitable for personal reasons while reserving to his son the discretion when he deemed it proper to pay over the fund. The daughter made no demand for action in the lifetime of her father. This practical construction of the power is not without weight.

Then, too, the testator cannot have intended to enforce *unequal* treatment of his grandchildren. Some of his granddaughters might never desire to marry. If then his son (as the event proved) attempted to appoint the whole trust *equally* to his children (conceiving that the power in respect of any marriage of a child was a discretionary one) the holding that the testator prescribed an imperative power would result in the secondary trust funds being compelled ratably to contribute to the outright payment and thereby each child of Julius B. Lane other than Elinor Lane Asch would suffer a substantial adverse discrimination. Only if the power were exercised by the son while he lived could the latter by adjustments made in the exercise of his power of appointment of the balance of the primary fund rectify such disparity of treatment of his children. The testator cannot be supposed to have intended fortuitous opportunity for discrimination among his grandchildren. On the contrary, the will is instinct with the idea that Bernhard

Lichtenstein was furnishing to his son Julius an opportunity to establish his daughters in life if in his discretion a payment out of the trust fund of $25,000 would contribute to that end. The conclusion that the fund is not payable at all makes unnecessary the requested ruling as to its source.

The validity of the exercise by Julius B. Lane of the power of appointment cannot be challenged. In *Matter of Hart* (262 App. Div. 190) it was held, reversing a co-ordinate branch of this court, that an appointment in trust might be made under a power to appoint in absolute ownership. In *Matter of Jackson* (175 Misc. 882) a number of pertinent authorities are reviewed and the conclusion was there reached that such an appointment under such a power has support in decisions in the Court of Appeals and has support in the writings of leading commentators. *Matter of Kennedy* (279 N. Y. 255) is not to the contrary since the case merely construed a particular will and laid down no general rule. The text of this will does not limit the donee of the power in respect of the estates which he might create.

The holding that the appointment is valid makes necessary consideration of the consequences flowing from the fact that the appointees take less under it than they would have taken if the power had not been exercised at all. Obviously they take less since they are deferred in possession of capital (until they reach specified ages) under the appointment, whereas under the donor's will they would have taken in possession immediately on the donee's death, failing exercise by him of the power to appoint. If the estate granted by the appointment matches the estate granted in the donor's will on failure to exercise the power to appoint the right to elect to take in the donor's estate is clear. (*Matter of Duryea,* 277 N. Y. 310.) If the appointment is to one who would take on failure to appoint but the estate granted is less than the gift under the donor's will the right to elect is not clear under the cases in this State. In *Matter of Cooksey* (182 N. Y. 92), a tax case, an appointment was held taxable which fixed times of payment of property differing from the dates specified in the source of the power. This suggests at least that the appointees were compelled to take in the donee's estate. In *Matter of Warren* (62 Misc. 444) Surrogate HEATON held expressly that the appointees of an estate differing from that provided alternatively in the donor's will *must* take under the appointment. In *Matter of Canda* (114 Misc. 161; revd., on other grounds, 197 App. Div. 597) a co-ordinate branch of this court reached a contrary conclusion and held that recipients by appointment of an equitable estate merely *could* elect to take under the donor's will. In its opinion the appellate court said, obiter, that the views of the court below were sustained by *Matter of Lansing*

(182 N. Y. 238). In *Matter of Lansing (supra)* the gift under the appointment was precisely the same as that made alternatively by the donor. The Court of Appeals there said that the appointment conveyed nothing of substance and constituted a matter of form. The case did not touch the point here involved. The precise question, however, was considered by the Federal courts. (*Rothensies* v. *Fidelity-Philadelphia Trust Co.*, 112 F. [2d] 758; *Legg's Estate* v. *Commissioner of Internal Revenue*, 114 id. 760.) In each of these cases it was held that the appointment of an equitable estate under a general power to appoint a fee permitted the appointee to take in the donor's estate. These cases are discussed in 41 Columbia Law Review (pp. 149–155). The principle applied in these Federal cases is that if the gift to the appointee is within the compass of the gift authorized by the donor of the power the legatee may take it in the donor's estate though it does not match precisely the terms of the alternative gift by the donor. That a general power includes a power to appoint an equitable estate has been settled in this department in *Matter of Hart (supra)*. On these authorities the court holds that the appointees may take in the donor's estate.

That ruling leaves little to discuss respecting the burden of the tax assessed on these gifts. In the donor's estate an outright tax was assessed on the life interest of Julius B. Lane. In addition a contingent tax of $11,808.24 was assessed on the full undiminished value of the trust, $276,456.08. The donor's will directs payment of all taxes out of his general estate. The deposit made to secure the contingent tax must be used to pay the tax now assessed. The trustee should make application for fixation of the tax now on the interests now taxable. If it be found because of tax laws now operative that the deposit is not sufficient to cover the tax now payable and any deposit required for any contingent tax liability, the new problems so posed may be brought to the court's attention in either the tax proceeding or in one under section 124 of Decedent Estate Law.

A relatively minor question as to form of distribution requires answer. It is proposed to make exact division of the cash and of securities susceptible of exact division. It is proposed to make transfers ratably of undivided interests in all other securities. Under the donee's will this course is permissible and no appraisal is necessary.

A final problem relates to the investment powers of the trustees for the children of Julius B. Lane. The court holds that the powers granted by the donee control.

Submit, on notice, decree construing will and settling the account accordingly.