In the Mater of the Accounting of JUNIUS S. MORGAN et al., as Trustees under the Will of J. PIERPONT MORGAN, Deceased.

Surrogate's Court, New York County, June 17, 1948.

*Davis Polk Wardwell Sunderland & Kiendl* for Junius S. Morgan and another, as trustees under the will of J. Pierpont Morgan, deceased, and others, petitioners.

*Charles H. Tuttle* and *Stoddard B. Colby* for Mabel S. Ingalls, respondent.

*Sol A. Rosenblatt* and *Charles Roden* for Eleanor M. Gibbs, respondent.

*Satterlee, Warfield & Stephens* (*J. Fearon Brown, James F. Dwyer* and *Bennett Frankel* of counsel), for Huger W. Jervey, as executor and trustee under the will of Louisa P. Satterlee, deceased, respondent.

*John L. Buckley,* special guardian for Sandra S. Ingalls, an infant, respondent.

COLLINS, S. Article V, section 3 of decedent's will created a trust in the principal sum of $3,000,000 for the benefit of decedent's daughter, Louisa P. Satterlee. Decedent granted his daughter the power to appoint said sum by her will. Mrs. Satterlee died in the year 1946, thirty-three years after the death of her father, and left a will in which she stated that she was exercising the power of appointment. This proceeding has been instituted by the surviving trustees and the executors of a deceased trustee for the judicial settlement of their account and for a construction of the wills of decedent and his daughter in order that it may be determined whether or not the power of appointment has been exercised validly.

The will of decedent was executed in the year 1913. At that time Mrs. Satterlee's two children (decedent's granddaughters) were infants of tender years. The pertinent text of decedent's will is as follows: " If my daughter Louisa, wife of Herbert Livingston Satterlee, shall survive me, but not otherwise, I give and bequeath unto my said executors and trustees the sum of Three Millions of Dollars, in trust to collect and receive the income thereof and to pay over the net income unto my said daughter Louisa, during her natural life, and upon her death I give and bequeath said sum of Three Millions of Dollars unto her issue, if any, her surviving, if more than one share and share alike, *per stirpes* and not *per capita,* subject, however, to the power and authority which I hereby give to my said daughter to dispose of said sum of Three Millions of Dollars by her last will and testament among her issue in such shares or proportions and on such lawful trusts as she may think proper."

Mrs. Satterlee's issue are her two daughters, Mrs. Eleanor M. Gibbs and Mrs. Mabel S. Ingalls, and an infant granddaughter, Sandra Satterlee Ingalls. The will of Mrs. Satterlee expressly exercised the power of appointment. The direction given by the donee of the power of appointment is that one half of the principal sum shall be continued in trust for the benefit of Mrs.

Ingalls during her lifetime and on her death such one half of the principal shall be paid to Mrs. Ingall's issue surviving her per stirpes. The donee's will provides further that in the event Mrs. Ingalls shall leave no issue surviving her such one half of the principal sum shall be paid to the persons appointed under Mrs. Ingall's will lawfully and consistently with the provisions of decedent's will. Mrs. Satterlee's will directs that the remaining one-half portion of the trust fund be continued in trust for the benefit of Mrs. Satterlee's daughter, Mrs. Gibbs, with the remainder payable after her death to her issue or in the event of her death without issue surviving her to Mrs. Ingalls, or if she be then dead, to her issue.

The attack upon the exercise of the power of appointment is made by Mrs. Ingalls who asserts that her mother's will ineffectually attempts to exercise powers not granted in decedent's will. It is not urged that Mrs. Satterlee's will creates any unlawful suspension of the power of alienation or violates the rule against perpetuities. The argument made is that the appointment of remainder interests to Mrs. Ingalls' issue and to the possible issue of her sister violated the provisions of decedent's will. At this time Mrs. Ingalls' daughter, Sandra, is her only issue and is the person presumptively entitled to the remainder of one portion of the fund, while Mrs. Ingalls herself is the person presumptively entitled to the remainder of the other portion. Sandra Ingalls also has a remainder interest in the latter portion which will be realized if Mrs. Ingalls predeceases her sister and any issue hereafter born to the latter shall not survive her. The contentions of Mrs. Ingalls are that the alleged invalidity in the exercise of the power of appointment entitles her presently to one half of the fund outright and free of any trust, and also entitles her to a vested remainder interest in the balance of the fund subject only to the life interest of her sister.

The basic argument advanced by Mrs. Ingalls is that the power granted to Mrs. Satterlee to dispose of the fund " *among her issue* in such shares or proportions and on such lawful trusts as she may think proper " (emphasis supplied) permitted only an apportionment of the fund between the two daughters of the donee of the power and forbade a disposition which conferred any benefit upon a grandchild of the donee. This argument is constructed upon the initial premise that because decedent bequeathed the fund to Mrs. Satterlee's issue per stirpes subject to the exercise of the power, Mrs. Satterlee's two daughters were the persons who would receive the fund in

equal shares had the power not been exercised, and it should follow that decedent intended to restrict Mrs. Satterlee to an appointment to the identical two persons. In other words the assertion is that Mrs. Satterlee had no more than a power to apportion the fund between her two daughters. All the parties agree that the will of decedent is the product of skilled and experienced draftsmen who were fully familiar with the usage and significance of legal terminology. Particularly in view of this concession, the suggestion that the locution " her issue, if any, her surviving, if more than one share and share alike, *per stirpes* and not *per capita* " was intended by decedent and by his draftsmen to be synonymous with the expression " among her issue " is without merit. The complimentary appraisal of decedent's will by all parties does not permit the court to charge the economy of words in the latter-quoted expression to either the ignorance or the indolence of the draftsmen. The employment of the concise expression " among her issue " cannot be regarded as either an indifferent use of language or a labor saving device. On the contrary, the expression must be considered as having the precise definition acquired by it from long usage in the vocabulary of the law. In one instance the will contains a bequest to issue and defines such class of beneficiaries as those " her surviving, if more than one share and share alike, *per stirpes* and not *per capita* ". In another instance the word " issue " is used without limitation or restriction. The assertion that a lengthy definitive expression means no more than a single word lifted from that expression is untenable. Throughout decedent's will technical expressions are employed time and again. In the absence of clear evidence of a contrary intent on the part of the testator, such expressions must be given the exact meaning which the law ascribes to them.

The intention of decedent is all controlling. Scores of decisions pertaining to testamentary intentions are cited in the briefs of the parties. Prior judicial decisions defining legal phraseology are helpful but such determinations are of little aid in any other respect in seeking out the intention of a testator. In the case at bar, decedent's primary concern was provision for his daughter during her lifetime. Decedent accomplished his primary purpose by the creation of the trust for her benefit. He granted his daughter the privilege of disposing of the trust principal by her will and in the exercise of ordinary caution he provided for the disposition of such principal should his daughter fail to do so. Whether the will is regarded as con-

taining a bequest of the trust remainder subject to the power of appointment or a bequest of such remainder to be effective in default of the exercise of the power is of no consequence. Decedent intended the bequest to be operative only in the event his daughter failed to exercise the power. The granddaughter of decedent who here attacks the exercise of the power states that she is motivated in part by her desire to prevent a great fortune from ultimately falling into the hands of her immature child. The intimation is that decedent should have reposed less confidence in his daughter, who at the date of his will was a mature woman and the mother of two children, than in one of such children who was then an infant of approximately the same age as the infant party to this proceeding. Decedent's granddaughter believes that decedent wanted her to have the untrammeled privilege of consuming the fund or the disposition of it by her will, but insists that decedent placed definite limitations upon his daughter's testamentary disposition of the fund. Every testator has absolute discretion in disposing of his own property within the broad privilege granted by the sovereign State. A testator may direct that property vest immediately in possession or he may direct the manner in which property ultimately may vest upon the termination of a trust. A third alternative is to grant a power of appointment in respect of property. An accepted reason for the employment of such alternative is the recognition by a testator of the fact that a testamentary trust might not terminate until many years after his own death at a time when the marriages of his descendants, the birth of issue and deaths in the family will affect the composition of the groups of persons who would comprise natural objects of his bounty. Such circumstances of survivorship as well as considerations of the physical and mental capabilities of particular descendants and the success of descendants in coping with the vicissitudes of life cause many testators to commit the final disposition of trust property to a competent person with an actual knowledge of the conditions existing at the time such ultimate disposition is being made. Here decedent placed that confidence in his daughter. She survived him by thirty-three years, a period of time ample to work many changes in the number and circumstances of decedent's descendants. Decedent placed a single restriction upon his daughter's disposal of the property by confining the gift to his daughter's issue. He permitted her to appoint the property in such shares or proportions and on such lawful trust as she should think proper. Because of the daughter's prerogative to appoint the

fund to one or more of her descendants of any degree, the appointment made by Mrs. Satterlee was a valid exercise of the power that decedent vested in her.

The fact that decedent took the precaution to include in his will a disposition of the property in the event the power was not exercised, does not control the extent of the power. Decedent provided that in such contingency the fund be paid to his daughter's surviving issue per stirpes. This provision for a stirpital disposition was a normal and usual one. Decedent could have directed a disposition per capita. It is inconceivable that any competent draftsman would have provided that such absolute bequest be to issue generally and thereby encourage a controversy as to whether a stirpital or capital distribution was intended. In respect of the grant of the power, a like need for limiting the class of issue did not exist for the reason that the donee of the power was permitted to make the selection of the appointees from among her issue. The rulings in *Matter of Farmers' Loan and Trust Co.* (213 N. Y. 168), *Matter of Durant* (231 N. Y. 41), *Central Hanover Bank & Trust Co.* v. *Pell,* (268 N. Y. 354) and like decisions concerning direct gifts to issue are wholly irrelevant to the question before this court.

Some comment is called for regarding *Matter of Kennedy* (279 N. Y. 255) a decision which is cited by Mrs. Ingalls as determinative of the issue herein. In that decision the court discussed the question as to whether a power to appoint a fee includes the power to appoint a lesser estate but said that the alleged rule was neither approved nor disapproved inasmuch as it would have had no force under the facts then at bar. The ruling was that the intention of the testator as expressed in clear language contemplated an absolute disposition of his property by exercise of the power, that there existed no power to extend the ultimate vesting to some future time and that the only authority given by the will was to apportion the property within the class fixed by the donor. It has been held that the *Kennedy* decision (*supra*) laid down no general rule and must be confined to the particular facts of that case. (*Matter of Hart,* 262 App. Div. 190, 194–195; *Matter of Lichtenstein,* 177 Misc. 320, 326.) In the will now before this court the power to create trusts is granted in explicit terms. The *Kennedy* decision has no application.

The attorneys for the trustees have stated their intention to supplement the account now on file and to obtain a supplementary citation herein for the purpose of settling such supplementary account. If an intermediate decree construing the will is desired at this time it may be submitted on notice.