Maximilian Moss, S.
In this accounting proceeding, a construction is sought of the will’s provisions whereunder the residuary estate is given to testator’s first and second cousins. Testator died August 30,1955, at the age of 88 years, three weeks after the execution of his will. He was a bachelor, whose father died in 1899 and his mother in 1923 at the age of 74 years; and his three brothers and three sisters predeceased him without descendants.
Testator was a lawyer, but whether or not he had extensive practice in estate matters involving the consideration of the technical definition of the words “ second cousins ” as used in the residuary clause is not indicated. The pleadings in the probate and this proceeding do not disclose whether testator personally prepared the will. The dispositive provisions of the will are simple; the forgiveness of an indebtedness due from a friend; bequests of $5,000 each to three friends and two sisters-in-law of one of his predeceased sisters. To those two sisters-in-law he also gave the furniture and effects of a house in Albany, New York, apparently his ancestral home as originally he came from that city where his father and mother, brothers and sisters had lived, died and were buried. Presently residing in that city are 10 of testator’s distributees and 9 children of 3 distributees who died after testator.
It appears that the testator was not too well acquainted with his collateral relatives, although at one time he knew of the existence of several paternal and maternal first cousins and their children, but was uncertain whether any first cousins were alive or all had predeceased him. There is an absence of proof that testator knew of the existence of any true second cousins either prior to or at the time of the execution of his will. It has been the court’s experience that most people are conversant with their first cousins — if they be residents of the same locality. Frequently they are wholly unacquainted with their parents’ first cousins to whom they bear the relationship of first cousins once removed, and seldom know the children of such first cousins, who are their second cousins.
Against that background testator gave his residuary estate ‘ ‘ to such of my 1st and 2nd cousins who shall be living at the time of my death and who shall establish such relationship to the satisfaction of a court of competent jurisdiction, in equal shares, per capita and not per stirpes, absolutely and forever.” The residuary estate is greater in value than the sum total of the prior bequests. The disposition thus made of the residuary estate is indicative of the stronger pull upon testator’s beneficence of blood relationship than that exerted by friends. It *372 is apparent testator sought to avoid intestacy with respect to his residuary estate.
When testator died he was survived by 19 children of paternal first cousins and 15 children of maternal first cousins as his distributees. Since then three of those distributees died intestate, survived by their respective widows who since died, and nine children. None of testator’s distributees is within the classes specified by the testator were the court to adopt the legal definition of first and second cousins set forth in People v. Clark (62 Hun 84-85) as follows: “ The children of brothers and sisters are first cousins to each other, otherwise called cousins-german or simply cousins. The children of first cousins are second cousins to each other. The children of second cousins are third cousins to each other. The child of a first cousin is a first cousin once removed to his father’s (or mother’s) cousin. So the child of a second cousin is a second cousin once-removed to his father’s (or mother’s) cousin. But the child of a first cousin is sometimes loosely called a second cousin to his father’s (or mother’s) cousin. This is accurately stated in the Century Dictionary sub voce cousin.” (Emphasis supplied.)
There is nothing contained in the will which gives a clue to the sense in which testator used the phrase “ second cousins.” Nor must the court assume that since the testator was a lawyer, and either personally prepared his own will or had it prepared by another lawyer, he either personally used that phrase of second cousins in the sense of meaning grandchildren of great aunts or great uncles, or adopted the language of the scrivener in the same sense. In matters involving persons who were children of first cousins and related to decedents, the courts also have referred to such children as second cousins (Bishop v. Bishop, 174 Misc. 2 ; Matter of Schlosser, 63 Misc. 166, 167), included among whom was one of the court’s distinguished predecessors, Surrogate Ketcham, in Matter of Barry (62 Misc. 456). Surrogate Delehanty, in Matter of Bannan (147 Misc. 544), also took cognizance of the common usage of the words “ second cousins ” as meaning children of first cousins.
The court is familiar with that body of the law which imputes to the testator, who was a lawyer or whose will was prepared by an expert draftsman, the intent to employ technical expressions according to their exact meaning which the law ascribes to them (Matter of Morgan, 193 Misc. 405). But in the light of the fact that the testator did not know of the existence of any second cousins when he executed his will, and the fact that the words “ second cousins ” have been referred to by the courts *373 as meaning children of first cousins, this court holds the testator employed the words “ second cousins” in the sense in which they are popularly used, that is, children of his first cousins, and so construes the will. If the court were to construe the words “ second cousins ” as used in this will as meaning those persons who are grandchildren of great-aunts and great-uncles of the testator, there would be intestacy as there is no proof that persons in that degree of relationship survived the testator. The construction, so placed upon the words “ second cousins ”, fortuitously coincides with the distribution which would be decreed in intestacy.