CHARLES REXFORD MASSEY, EXECUTOR, APPELLEE, V. GUAR-
ANTY TRUST COMPANY ET AL., APPELLEES: HARRY
BOSTWICK MASSEY ET AL., APPELLANTS.

5 N. W. (2d) 279

FILED AUGUST 14, 1942.   No. 31466.

*Richard E. Robinson, Gerald Vasak* and *Fritz Zeigler*,
for appellants.

*Crofoot, Fraser, Connolly & Stryker, W. M. McFarland* and *Thomas Marshall, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ., and ELLIS, District Judge.

ELLIS, District Judge.

This case is presented as a Case Stated under Rule 10-d of this court.

On February 4, 1920, Henry C. Bostwick, now deceased, created a voluntary trust of which the defendant Guaranty Trust Company of New York afterwards became a substituted trustee. After providing for payment of the income from the trust property during his lifetime to the settlor, who was designated in the trust indenture as the "party of the first part," the indenture provided as follows: "After the death of the party of the first part, to pay to Martha Bostwick Massey during her natural life, in quarterly instalments on the first days of January, April, July and October of each year, the entire net income from said estate, and at her death to pay over and deliver the principal of said trust to whomsoever may be designated by her by Will or other testamentary instrument, but in the event that the said Martha Bostwick Massey fails to dispose of the principal of said trust fund, or any portion thereof, by Will or other testamentary instrument, the trustee shall, upon her death, pay over and deliver to her descendants, all of said principal undisposed of by her Will or other testamentary instrument, and in the event that the said Martha Bostwick Massey leaves no descendants said trustee shall pay over and deliver the principal of said trust to the heirs of said Martha Bostwick Massey."

Martha Bostwick Massey enjoyed the benefits provided for her during her lifetime and upon her death on February 5, 1941, she was survived by her husband, Charles Rexford Massey, Harry Bostwick Massey, a son, and Mildred Massey Hinemon, a daughter. At the time of her death Mrs. Massey was a resident of the District of Columbia. She left a last will and testament which was admitted to

probate there and in which she undertook to dispose of the trust *res* over which she was given power of appointment, as follows: A life estate in favor of her husband, Charles, with unlimited discretion in him to use principal as well as income. Upon the death or remarriage of her husband she bequeathed the property to a trustee and provided for its administration in four separate trusts with her son, Harry, her daughter, Mildred, and two granddaughters as the prime beneficiaries of the several trusts.

Some question having been raised as to the power of Martha Bostwick Massey under the original trust indenture to appoint and the manner in which she had attempted to exercise that power in her will, this action was brought by the executor of her will for the construction of the instruments involved. The defendants are the trust company named as trustee in both instruments and all possible beneficiaries under both of the instruments. The executor of Martha Bostwick Massey's will is her husband, Charles, and in addition to appearing as plaintiff in his representative capacity he is named as one of the defendants.

The answer of the defendant Charles Rexford Massey admits the allegations of fact contained in the petition and joins in the prayer of the petition for a decree in accordance with the facts and the law. The only party not of full age is Gertrude Read Massey. Her guardian *ad litem* answered, admitting all the allegations in the petition except those raising a question as to the validity of the appointments made by Martha Bostwick Massey. This answer further alleged that the power of appointment was general and unlimited and that the manner of its exercise was entirely valid and effective. The prayer was for confirmation of the appointment made and the minor's interests under the appointment.

The son, Harry, and the daughter, Mildred, filed an answer in which they admitted the allegations of the petition and alleged, in substance, that under the original trust indenture Martha Bostwick Massey's power of appointment was limited to appointment of the principal outright; that

her attempted exercise of the power was unauthorized, invalid and void; that the result was, in effect, a failure of exercise of the power and that these defendants were entitled to receive the trust estate outright, *per stirpes*, as the descendants of Martha Bostwick Massey. The prayer is appropriate to the allegations of the answer.

It thus appears that, if the appointment made by Martha Bostwick Massey is found to be valid and is confirmed, the surviving husband will receive a life estate and the beneficial interest in the remainder will vest in those designated in the four trust provisions. On the other hand, if the attempted appointment is found to be invalid and is struck down, the entire estate will vest outright in the son and daughter to the exclusion of all the other parties.

The trial court, after finding jurisdictional facts about which there is no dispute, found that the appointment as made was within the power granted and in all respects valid and entered a decree accordingly.

The son and daughter have appealed and the only other appearance in this court by brief is that of the guardian for the minor defendant.

The Case Stated sets forth the questions involved as follows:

First. Was the appointment of the principal of the Bostwick trust, as provided by the terms of the last will and testament of Martha Bostwick Massey, a valid exercise of the power of appointment conferred on her by the terms of the trust agreement of February 4, 1920?

Second. Was the power of appointment given to Martha Bostwick Massey a limited power to appoint the person or persons to whom the trustee was directed to pay over and deliver the principal of said trust upon her death absolutely?

Third. Does the trust indenture clearly indicate that it was Henry C. Bostwick's intention that the trust should come to an end with the death of Martha Bostwick Massey, and that the principal of the trust estate was thereafter to vest outright and absolutely?

It seems to be agreed that there are no cases in this juris-
diction involving a similar situation or problem and there-
fore we have no controlling or, for that matter, any very
helpful precedent in our cases. Likewise we have no stat-
ute dealing with the problem.

The only Nebraska cases cited by the parties are the fol-
lowing:

*Loosing v. Loosing*, 85 Neb. 66, 122 N. W. 707. This case
does not involve a situation at all similar to that before us
and can only be said to be helpful in that it appears to hold
that powers will be construed in this state according to the
principles of the common law. The court did have occasion
to make this significant statement: "The testator did not
specifically designate in his will the methods to be pursued
by his widow in executing the powers vested in her by him,
and she therefore is at liberty to indulge her judgment or
fancy by executing a deed or a will."

*Bunting v. Hromas*, 104 Neb. 383, 177 N. W. 190. This
case did not involve consideration of a power but rather the
construction of a will. "The decisions of the courts are nu-
merous as to the legal and technical meaning of words
usually employed in wills, and in some of the states some
fine distinctions and refinements have been made. These
decisions are of but little value in this state in the construc-
tion of wills, as we are now committed to the doctrine that
the intention of the testator is to be ascertained from a lib-
eral interpretation and comprehensive view of all of the
provisions of the will. * * * The court without much regard
to canons of construction or technical language will place
itself in the position of the testator, ascertain his will, and
enforce it in all its parts, if it be lawful to do so."

To the same effect is the opinion in *DeWitt v. Searles*,
123 Neb. 129, 242 N. W. 370. In this case the court also re-
iterates the principle that, even though an estate be looked
upon with disfavor by the law, yet, if it be lawful and a tes-
tator by unambiguous language creates such an estate, the
court must uphold it.

We think the principles of these cases are equally appli-

cable to the construction of trust instruments and powers contained therein.

In the first opinion in the case of *Arlington State Bank v. Paulsen,* 57 Neb. 717, 78 N. W. 303, the case was considered as involving questions of who had the legal title to the real estate, the executors or the heirs, and the question of whether power in the executors to sell included the power to mortgage. While this opinion was later set aside on rehearing and the case disposed of on other grounds (59 Neb. 94, 80 N. W. 263), the discussion of the court is not without some value in the case before us. In disposing of the first question, the court said (p. 729) : "The question is to be determined by ascertaining from an examination of the entire will of the testator what his intentions were." With reference to the power of the executors, the court said (p. 736) : "Whether the executors had power to mortgage the testator's real estate is, of course, to be determined * * * from an examination of the entire will." And (p. 740) : "If the executors used the power at all, they were bound to keep within its terms, and any attempt by them to exercise power in excess of that delegated must be held to be simply nugatory. Where the creator of a power defines the method of its execution, that method must be strictly followed, so far, at least, as may be necessary to give effect to his intent and design. This rule is fundamental."

As we go afield in search of cases directly involving powers of appointment and their exercise, we will consider first *Matter of Kennedy,* 279 N. Y. 255, 18 N. E. (2d) 146, which case is urged by appellants as directly in point and controlling in the case before us. In this case the power of the donee is expressed in directions to the trustee as follows: "Upon her death, to pay and divide the principal of said share to and among such of her children and issue of her deceased children as she shall by her last will and testament appoint," and upon nonexercise of the power "the principal of said share shall be transferred to and divided among her child or children, if any, in equal shares, *per stirpes.*"

In that case, as in the principal case, all of the income

from the trust was to be paid to the donee of the power during her lifetime, leaving only the principal for disposition upon her death. The donee attempted to exercise the power by creating trusts which gave the income *to her children for life* with the remainder *after* their deaths *to her grandchildren.* At the time of her death all of her children were living and there was no issue of any deceased children.

The New York court held that the power was limited and specific and said: "She had a specific and limited power to allocate the corpus of the trust in such shares as she saw fit *to a specific class described* by the donor" (emphasis supplied), and "It follows that the specific direction of Mr. Kennedy to his trustee to pay and divide the corpus of the trust upon the death of Lady Dunbar required the immediate vesting thereof upon her death."

With reference to the rule (about which more will be said later) that where there is no restriction the power to appoint a fee includes the power to appoint a lesser estate, the court said:

"The assertion that, in the absence of positive and express words of prohibition to the contrary by the donor, the power conferred upon a donee to appoint a fee includes the power to appoint a lesser estate is, at most, only a doctrine of equity limited to particular cases where the circumstances require its application. It is not a rule of universal application. *It has never been laid down as a rule of construction by our court.* (Emphasis supplied.) * * * Reliance upon any such general statement of a rule, even if applicable in a proper case, is unwarranted without consideration of its effect upon the intent and purpose of the testator, the nature of the power whether general, limited or specific and the general circumstances of the case under consideration. * * *

"We neither approve nor consider the validity of the alleged rule, for we find that in no aspect does it have any force under the facts in the case at bar. Here the power was limited and specific * * *.

" 'The intention of the donor of the power is the great

principle that governs in the construction of powers.' 4
Kent's Commentaries, p. 345. Within limitations with
which we are not here concerned, a testator may make such
disposition as he wishes of his property without interfer-
ence by the courts or by those who may believe that some
other disposition would be more desirable or practicable."

It may be noted that two of the six judges participating
in the case dissented.

We are not inclined to agree with the New York court's
treatment of the rule mentioned. In 1 Sugden on Powers
(3d Am. ed.) 535, sec. 40, the rule is stated thus: "It has
since been said, that although the power must not be exceed-
ed, nor its directions evaded, yet where there is no prohibi-
tion, everything which is legal, and within the limits of the
authority should be supported; and therefore that a power to
appoint a fee, but with no prohibition against giving a less
estate, ought to be held to authorize any legal limitations
within the scope of the power which may be served out of
the fee."

In *Butler v. Huestis*, 68 Ill. 594, it was said: "The law
seems to be well settled by authority, where a party has the
power to appoint a fee, if there are no words of positive re-
striction a less estate may be appointed. The appointment
of a less estate than the donee might have created under the
power, is not thereby rendered void. But where an appoint-
ment is to be made of a particular estate, or in a certain
manner, and in no other way, the negative words must con-
trol, and the donee is not permitted to appoint a different
estate, or in any other manner." The rule of this case was
quoted with approval in *Cheever v. Cheever*, 172 App. Div.
353, 157 N. Y. Supp. 428. In *Maitland v. Baldwin*, 70 Hun,
267, 24 N. Y. Supp. 29, the power was to appoint "in such
manner and form" as the donee might "direct, limit and ap-
point." In *Lehman v. Spicer*, 108 Misc. 721 (affirmed in
188 App. Div. 931, 176 N. Y. Supp. 445) the power was to
appoint "in such sums or amounts" as donee desired. In
both cases appointment in trust was upheld.

In *Wilmington Trust Co. v. Wilmington Trust Co.*, 15 Atl.

(2d) (Del. Ch.) 153, the Delaware court said: "But where the power is general, as to the quantum of the estate which may be appointed, the donee may appoint a lesser or qualified estate in the property, and it is not necessary to exercise the power in its entirety, or to its full extent. This rule is based on the principle that the lesser right is included in the greater. *Hillen v. Iselin*, 144 N. Y. 365, 39 N. E. 368; *Harker v. Reilly*, 4 Del. Ch. 72; *In re French's Estate*, 119 Misc. 445, 196 N. Y. Supp. 397; 49 C. J. 1266. This principle has been long recognized and applied in this state * * * . If *Matter of Kennedy* (*supra*) * * * and other subsequent New York cases based thereon, *intended to lay down any different rule*, this court is not bound thereby * * * . Moreover a careful reading of the opinion in the *Kennedy* case would seem to lead to the conclusion that the power involved was regarded as special and limited, and in no sense general, as to the quantum of the estate that could be appointed." (Emphasis supplied.) In this case the language of the power was as follows: " * * * shall be paid, transferred, conveyed and delivered to such lawful child or children, or other lawful lineal descendants" and "in such proportions and subject to such lawful conditions as such deceased child shall appoint and designate." Appointment of less than an absolute estate was upheld.

In *In re Comey's Will*, 173 Misc. 377, 17 N. Y. Supp. (2d) 949 (surrogate's opinion), the power was "to such of the descendants * * * in such amounts, shares and proportions and upon such estates." This was held to be a special power because limited to a class, but that it authorized appointment of property in trust.

In *In re Jackson's Estate*, 175 Misc. 882, 25 N. Y. Supp. (2d) 102 (surrogate's opinion), the court said with reference to the *Kennedy* case: "But the decision of the court is made strictly on the basis that the text of the Kennedy will expressly limited the area within which the power could operate. The case is therefore merely a case construing a particular instrument. The actual decision does not set up and does not purport to set up any general standard what-

ever or to establish or repudiate any rule of construction whatever. Aside from the specific holding that the particular will there under construction constrained a particular result the case means only that in the construction of a testamentary power the same singularity of approach exists as in the construction of any other portion of a will; and since no will has a brother the *Kennedy* case is illuminating but not controlling in any other case." This seems to be a rather accurate analysis of the *Kennedy* case.

The *Kennedy* case is again referred to in *Matter of Hart*, 262 App. Div. 190, 28 N. Y. Supp. (2d) 781, which reversed a surrogate's decision, holding the exercise of the power invalid. (172 Misc. 453, 15 N. Y. Supp. (2d) 318.) The power in the Hart will was in the following language: "* * * then to grant, convey, assign and pay over the corpus or principal * * * to such person or persons and in such manner and in such shares as he shall * * * appoint in fee simple absolutely."

"By this authorization the donor manifested complete indifference to the beneficiary or beneficiaries of the donee's exercise of the power. We do not find this indifference qualified by concern about the nature of the estate given to such beneficiary or beneficiaries. The donor authorized disposal 'in such manner' as the donee directed. The phrase, 'in such manner,' has been held to refer to the character of the estate which the donee may appoint, and connotes positive permission to the donee to create trusts. * * *

"We do not read the phrase, 'in fee simple absolutely,' appearing in clause eleventh of the donor's will, as an indication of an intention to restrict, but, on the contrary, as an expression of his intention to broaden and strengthen the unlimited power given to the donee. The donor used the phrase, 'in fee simple absolutely,' a second time in the eleventh clause of his will, and he also used it in article two of the third codicil. In each of these two instances the phrase is used in connection with the verb 'convey.' We are of the opinion that, in using the expression 'in fee simple absolutely,' the donor had reference to the nature of the conveyance rather than to the extent of the appointment. * * *

"The learned surrogate has relied on *Matter of Kennedy* (279 N. Y. 255) as authority for his holding that the donee was limited to an appointment of the property in fee. That case must be confined to the facts there presented. A consideration of the facts in *Matter of Kennedy* justifies a conclusion that by its holding the Court of Appeals did not intend to jettison the well-understood rule that the power to appoint a fee includes the power to appoint a lesser estate. * * *

"This attempted exercise of the power obviously included beneficiaries who were not members of the class at the death of Lady Dunbar and accordingly was void. * * *

"The Court of Appeals has frequently stated that the language used in the opinion, though it may appear general in scope, must always be taken with reference to the particular facts decided. We find nothing in the facts of the *Kennedy* case to justify the conclusion that the old rule of construction has been declared abandoned by the Court of Appeals under all circumstances. The Court of Appeals merely held the rule inapplicable to the particular state of facts then before it.

"*In Matter of Wildenburg* (174 Misc. 503) the surrogate whose decree is now under consideration has apparently modified his interpretation of *Matter of Kennedy* as applied to the case at bar. *Matter of Hart* (172 Misc. 453) is also commented upon in 53 Harvard Law Review (p. 687) and 24 Minnesota Law Review (p. 587). We note, also, that the New York County Surrogate's Court in *Matter of Jackson* (175 Misc. 882) and the Kings County Surrogate's Court in *Matter of Comey* (173 Misc. 377) have both held that *Matter of Kennedy* (*supra*) should be limited and considered as a case construing a particular instrument.

"Ordinarily, a testator's primary concern is as to who is to receive his property. If he is indifferent as to who is to receive it, he would naturally be indifferent as to how they receive it."

In *Geneva Trust Co. v. Sill*, 27 N. Y. Supp. (2d) 289 (supreme court), the court said: "Before the decision in *Mat-*

*ter of Kennedy* * * * the power to appoint a fee was generally conceded to include the power to appoint a lesser estate in the absence of any restriction in the instrument which was the source of the power," and cites several New York cases. In this case the power was to appoint "to such persons and in such shares, interests and proportions." This was held to be a general and unconfined power.

In *McClellan's Estate*, 221 Pa. St. 261, 70 Atl. 737, the power was "to appoint and vest any or all that remains * * * to and in such persons as he sees fit." An appointment in trust was held to be within the power.

In *Lawrence's Estate*, 136 Pa. St. 354, 20 Atl. 521, the power was "to grant and convey the real estate in fee * * * in such parts or shares." An appointment in trust was held valid and the court said: "The power is wholly unrestricted. The entire discretion is committed to the donee of the power, to grant the fee in such form and to such persons as she chose."

In *Lewis' Estate*, 269 Pa. St. 379, 112 Atl. 454, the power was to appoint "to such person or persons, being my lineal descendants * * * in such shares and amounts as she may choose." An appointment in trust was upheld. With reference to the power the court said: "It was restricted to a class only; but, operating within the class, it was not only general but absolute. Therefore, a use and trust, so imposed, being within the limits of the authority and in the exercise of an absolute right within the class, was not in violation of the original founder's intention, and is moreover sustained by *McClellan's Estate*, 221 Pa. St. 261."

In *Myers v. Safe Deposit & Trust Co.*, 73 Md. 413, 21 Atl. 58, the language was "shall pass to and become the estate and property of such of my children and grandchildren, or either, as she * * * shall have named and appointed to take and have the same." This was held to be a special power and appointment in trust invalid. "It is very clear to our minds that the testator designed whoever the wife nominated to take an absolute estate in the personalty and fee in the realty. He gives the wife the simple power to name

who shall take the estate, and she is given no power by implication to create a trust."

We shall not attempt to reconcile apparent conflict in results reached by the courts in the cases cited. They reveal the not unfamiliar picture of lack of uniformity of results even though all profess to apply the same rules. This is no justification for discarding all rules. To do so would doubtless produce an infinitely worse result.

From the foregoing we think that the rule quoted from Sugden, *supra,* is quite generally recognized and even in New York notwithstanding what is said in the *Kennedy* case. Furthermore, we think the rule is sound and useful to all who are concerned with the drafting and construction of instruments involving powers. We adopt it as a rule of construction in this state. Like all rules, it will not have application in all cases, and the rule itself does not purport to be applicable to powers containing a prohibition or limitation upon the exercise of the power.

While it is difficult to reconcile the results reached in the cases cited, it may be said that all the courts had a common design, which is frequently stated as a rule of construction, and that is that the donor's intention is to be ascertained and given effect if lawful.

We think it may be said of the cases cited that in many of them the appointment in trust was upheld where the power was not as broad and unqualified both as to the quantum of the estate to be appointed and the eligible appointees as in the principal case and that no similar power was involved in those holding the appointment invalid.

We are inclined to agree with those courts which hold that where the power is unlimited as to the quantum of the estate that may be appointed, even though the appointees be limited to a class, an appointment in trust is valid.

Turning now to the language of the power before us, we think it can be said that there is no prohibition or restriction expressed against the appointment of estates less than absolute. By use of the words "to whomsoever may be designated" it seems clear that Martha Bostwick Massey was

given the widest possible latitude in selecting appointees. Like the court in the *Hart* case, we think this is of great significance. The donor having indicated complete indifference as to the ultimate beneficiaries of the power, it would be illogical, unreasonable and contrary to common knowledge of human nature to attribute to him concern about the nature of the estate they were to receive and especially in the absence of any language indicating any such concern.

The only language which appellants urge as indicating such concern is "to pay over and deliver the principal." They say that this language and that involved in the *Kennedy* case, "pay and divide the principal," are synonymous and therefore contend that we should reach the same result as in that case. This involves an assumption that the *Kennedy* case turned on the words last above quoted. We do not so construe the opinion and in this we find support in the other New York cases cited. Whether we agree or disagree with the result in the *Kennedy* case, it seems clear that the case turned on the limitation of the appointees to a designated class and the attempt to include beneficiaries who were not members of that class. See quotation from *Hart* case, *supra.* A vital and fundamental difference between the power in that case and the one before us is the utter absence of direction or concern as to beneficiaries.

It may also be noted that Martha Bostwick Massey was entitled to receive all of the income from the trust *res,* leaving only the principal for appointment. In expressing the power and authority of the trustee to manage the trust, the donor contemplates that the principal of the trust might from time to time consist of both cash and securities. It was therefore merely a natural choice and use of words to direct that the principal be *paid* over and *delivered* to the appointees, whether they be appointed to receive in trust or absolutely. If the donor had expressly directed appointment in trust, he would doubtless have used identically the same language in directing the transfer of the trust *res* from his trustee to the appointed trustee. This was nothing more or less than a direction to the trustee to make a

complete surrender of the trust property, whatever the eventual disposition might be.

Courts ought not to resort to rules of construction where the intention is made clear by the instrument and thereby thwart the intention. Neither should the courts resort to strained, unnatural and fanciful constructions to create an artificial intention where none actually appears.

The language of the Georgia court in *Regents of the University System v. Trust Co.,* 186 Ga. 498, 198 S. E. 345, is appropriate. "If we should write into the second clause a limitation that the property must be appointed in fee simple and not otherwise, we would in so doing be adding to the instrument something which is not clearly implied, or, as we might say, something that is clearly not implied. Words to this effect could have been so easily inserted by the testator had any such meaning been intended by him."

The power in that case was without limitation in regard to beneficiaries. The court continued: "It is presumed that Mr. Brownell was possessed of normal characteristics, and it is hardly supposable that he would have been willing for beneficiaries to be chosen by his wife from all the world, but at the same time would control her as to the kind of estate which she might devise. Would he as a reasonable man have said to her, 'You may give $100,000 to whomsoever you please, provided you give it absolutely and without condition; but you cannot bestow the slightest benefit on my nearest relation or dearest friend by any sort of estate on condition?' We cannot think so."

We hold that where a power is unlimited as to eligible appointees, and there is no restriction on the quantum or character of the estate to be appointed, the donee may appoint a fee or any lesser or qualified legal estate.

We conclude that Henry C. Bostwick expressed no intention that the appointment of Martha Bostwick Massey must vest an absolute estate in her appointees; that the power of appointment given her was not a limited power; and that her appointment was a valid exercise of that power. The judgment of the district court was therefore right and it is affirmed.

The guardian *ad litem* for Gertrude Read Massey is allowed a fee of $350 for his services in this court, the same to be paid out of the estate involved. Other costs incident to the appeal will be taxed to appellants.

AFFIRMED.