EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Successor Trustee under the Will of Elizabeth B. McComb, deceased, and EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Will of James C. McComb, deceased,

*vs.*

FLORENCE McCOMB JAMES, ELIZABETH B. MILLS, ELIZABETH M. PEOPLES, JAMES McCOMB SINCLAIR, JOHN MILLER SINCLAIR, HAIDA A. DUNHAM and HAIDA A. DUNHAM, formerly Haida A. McComb, administratrix of the estate of Henry S. McComb, deceased.

*New Castle, May. 15, 1946.*

*Henry M. Canby,* of the office of Richards, Layton & Finger, for complainants.

*Alexander L. Nichols,* of the firm of Morris, Steel, Rodney, Nichols & Arsht, for Florence McComb James, Elizabeth B. Mills, Elizabeth M. Peoples, and James McComb Sinclair, defendants.

*William S. Satterthwaite,* of the firm of Satterthwaite & Satterthwaite, for Haida A. Dunham and Haida A. Dunham, administratrix of Henry S. McComb, deceased, defendants.

SEITZ, Vice-Chancellor: I am called upon to decide whether a power of appointment was validly exercised by an appointment in trust.

Complainant, Equitable Trust Company, in its capacity as successor trustee under the will of Elizabeth B. McComb, and as trustee under the will of her son, James C. McComb, filed a bill for the construction of Elizabeth's will. The problem of construction involves Item 3 of the will of Elizabeth B. McComb, and Items 4 and 5 of the will of James C. McComb.

Item 3 of the will of Elizabeth B. McComb provides:

"Item 3. I give, devise and bequeath unto my daughter Martha McComb, her heirs. and assigns, all that farm. or tract of land with the buildings thereon erected, in Brandywine Hundred, New Castle County aforesaid, whereon my son, James C. McComb, now resides, together with all the stock, farming utensils, and all the personal property whatsoever belonging to appertaining to said farm; in trust, nevertheless; to suffer and permit my son, James C. McComb, to occupy, manage, let and control said farm, and to enjoy all the rents, issues and profits arising therefrom, for and during the term of his natural life, and in further trust, after the decease of my said son, to convey said farm in fee simple and to deliver all of said personal property connected therewith, to such person or persons, as my said son James C. McComb, by his last Will and Testament, may direct and appoint to receive the same; and in the absence of such direction and appointment by my said son, then in trust, to convey said farm in fee simple and to deliver said personal property unto such of the children and issue of deceased children of my said son as may be living at his decease, in equal shares, by right of representation."

By Items 4 and 5 of his will James C. McComb disposed of the residue of his estate, "and all the Estate that I have the right and power to dispose of by will or instrument of writing in the nature thereof, or any Estate held in trust

for me, or for my use or benefit." James disposed of the residue, including the property subject to the power, by creating separate trusts of the property for his three children, Florence G. Sinclair (now Florence McComb James), Elizabeth B. Mills and Henry S. McComb, for their respective lives with remainders over to their respective issue, per stirpes. It was further provided that on the death of any child without issue, the trust property then held for the benefit of such child should pass in equal shares to the testator's surviving children, upon the same trusts theretofore created with respect to their shares.

By a codicil to his will dated June 9, 1924, James limited the remainder benefits under the trust established for his daughter Florence to the issue resulting from her marriage with J. Miller Sinclair. Such issue are James McComb Sinclair and John Miller Sinclair, both defendants in this cause.

Elizabeth B. McComb died on March 1, 1897. Her son, James, died on August 28, 1931, and Henry, the son of James, and one of the three life beneficiaries of the trust created under Items 4 and 5 of James' will died intestate on August 8, 1937.

James' daughter, Elizabeth B. Mills, has one daughter, Elizabeth M. Peoples, who is also a party hereto. The defendants, Florence McComb James, formerly Florence G. Sinclair, and Elizabeth B. Mills are the sole income beneficiaries of the trusts since the death of their brother Henry. The remaining defendant, Haida A. Dunham, is the widow of Henry S. McComb.

All the defendants have appeared and filed answers, except John Miller Sinclair and a decree *pro confesso* has been taken against him.

All the defendants who have appeared, except Haida A. Dunham, the widow of Henry S. McComb, contend in effect that James C. McComb by Items 4 and 5 of his will validly

exercised the power of appointment given him by Item 3 of the will of his mother, Elizabeth B. McComb. Haida A. Dunham contends, however, that the power of appointment was not validly exercised by James because he did not comply with the terms of the power created in his mother's will. She asserts that the trusts created by James are invalid insofar as they purport to pass the property subject to the power because they are not authorized by the power and therefore, the distribution of the property in question on the death of James should have been made in accordance with the will of Elizabeth B. McComb, under which, in default of the exercise of the power, one-third would have passed to Henry S. McComb outright. Accordingly, as his widow she claims dower in one-third of the farm property, and as administratrix of her husband's estate, one-third of the personalty.

The parties have agreed that the construction of the wills involves solely a question of law, and have, therefore, stipulated with the approval of the court that the question of the validity of the exercise of the power of appointment by James shall be heard separately and disposed of in the first instance. All parties seem to concede that if I find that James exercised the power validly, such a finding will be dispositive of the case and will render unnecessary consideration of other matters raised by the bill and answers.

Did the appointments in trust provided for by Items 4 and 5 of the will of James C. McComb constitute a valid exercise of the power given him by Item 3 of his mother's will?

The source and ambit of the power are found in Item 3 of the will of Elizabeth B. McComb. *Wilmington Trust Co. v. Wilmington Trust Co.*, (1940) 25 *Del. Ch.* 121, 15 *A.2d* 153. It directs her trustee to hold the designated property "* * * in further trust, after the decease of my said son, to convey said farm in fee simple and to deliver all of said personal property connected therewith, to such person

or persons, as my said son James C. McComb, by his last Will and Testament, may direct and appoint to receive the same; * * *."

All parties agree that James sought to exercise this power by conveying the property involved in trust and not absolutely, and they further agree that the only question to be decided is whether the power permitted him to appoint less than an absolute interest. I use "absolute interest" here as applying to both the realty and the personalty involved and as being the greatest possible interest in property which is recognized.

The defendant, Haida A. Dunham, contends "that the attempted exercise of the power of appointment by James C. McComb was invalid because by the express words of his mother's will, he was limited to an appointment 'in fee simple', and hence could not make a valid appointment in trust." The other defendants in effect urge that "fee simple" as used in the power has to do with the extent of the power only, and not the manner of its execution, and that, therefore, the appointment in trust was valid. (While the will involved used "fee simple" with reference only to the realty, the solicitors have used it herein as applying equally to personalty and realty and it will be so used in this opinion.)

The trustee takes a neutral position, except that it suggests we may not be dealing with a power of appointment at all, but "a mere right to designate and thus similar to a power given by a will to sell an estate." I have no doubt that we are here concerned with a power of appointment, not only because of the language identifying the devise as a power of appointment, but also because of the nature and the substance of the instruments involved.

Since there is at least a superficial preoccupation with words in every attempt to determine a question involving powers of appointment, it becomes necessary to define with reasonable certainty the terms to be employed.

The definitions of the various terms employed will not be emphasized and will be avoided in part by the use of words which it is hoped accurately describe the situation or relationship involved. In this way the problem can be scrutinized apart from the terms which have various meanings to those who have been exposed to the legal lore of powers of appointment. Since, however, in discussing our problem we are met at every turn in the decided cases with the use of the terms "general powers" and "special powers" it may be well to state how those terms will be used herein.

Upon reflection, we see that powers (and I speak throughout of powers exercisable only by will) may be unlimited in the sense that the donee can dispose of an absolute interest or any lesser interest. This power has been described as a general power as to the quantum of the estate to be appointed. I shall call it herein a power "general as to estate."

A power may also be unlimited in the sense that the donee can dispose of the interest (not differentiating as to quantum) to any one or more persons he desires. This power has been described as a "general power as to appointees." I shall call it herein a power "general as to appointees."

A power may be special in the sense that the donor designates the particular quantum of interest which the donee can appoint and the donee can appoint no other interest. I shall call such a power herein "special as to estate."

A power may also be special in the sense that the donor designates the persons or classes who shall take (appointees) and the donee may not appoint persons other than those designated. I shall call such a power herein "special as to appointees."

It is apparent that powers as defined above (subject to infirmities inherent in any definition, and particularly so in the field of powers where legal anachronisms prevail) can

be general as to estates and special as to appointees, as well as any of the other combinations. When the terms mentioned are used, they will be employed as defined above unless otherwise stated.

It should be noted that the definitions of general and special powers used in 3 *Restatement of the Law of Property*, § 320, do not parallel the definitions given above. The *Restatement* defines testamentary powers as follows:

"(1) A power is general, as the term is used in this Restatement, if

"(a) * * *

"(b) being testamentary, it can be exercised wholly in favor of the estate of the donee.

"(2) A power is special, as the term is used in this Restatement, if

"(a) it can be exercised only in favor of persons, not including the donee, who constitute a group not unreasonably large, and

"(b) the donor does not manifest an intent to create or reserve the power primarily for the benefit of the donee."

It is apparent that the *Restatement* definition differs from that used herein, but I think it will become equally apparent that none of the definitions affects or aids materially in the solution of the problem before us.

Having established in a general way a common language of definition, it is next pertinent to isolate certain principles of law as they relate to the particular power of appointment here involved, having in mind that James admittedly exercised the power by an appointment in trust although the power directs a conveyance of the realty in "fee simple," and a delivery of the personal property to such person or persons as James by his will should direct and appoint to receive the same.

It is settled law in this state that a power giving the right to appoint absolute interests includes the right to appoint lesser interests. *Equitable Trust Company v. Foulke, et al.*, (1945) 28 *Del.Ch.* 238, 40 *A.2d* 713; *Wilmington Trust*

*Co. v. Wilmington Trust Co., supra.* Our problem, however, goes further and requires a determination of the following legal propositions: (1) Can a person create a power which gives the donee of the power the right to appoint only an absolute interest and (2) If so, what rule of construction will be applied in determining whether the particular right created by the power permits the appointment of an absolute interest only or whether it also permits the appointment of some lesser interest.

As to the first proposition, it seems clear that we are here concerned only with a rule of construction, see *Massey v. Guaranty Trust Co.,* (1942) 142 *Neb.* 237, 5 *N.W.* 2d 279, and there is no rule in this state either of construction or of public policy which prohibits a person from creating a power which can be exercised only by the appointment of an absolute interest. Such a power under our definitions is special as to estate because the donee has no choice as to the interest he can appoint. This designation was recognized by the Chancellor in *Wilmington Trust Co. v. Wilmington Trust Co., supra,* in speaking of such a power in the case of *In re Kennedy's Will,* (1938) 279 *N.Y.* 255, 18 *N.E.* 2d 146.

However, a different rule has been adopted in the *Restatement of the Law of Property.* *Section* 356 provides in part as follows:

"The donee of a general power can effectively

*    *    *    *    *    *

"(e)   make appointments in trust."

By a Comment appearing on pages 1973-4 of the same *Restatement,* the quoted rule is construed as depriving a person of the very right to create a power which would permit the appointment of an absolute interest only. Thus it is said:

"b.   *Manifestation of contrary intent by the donor.* It is not to be expected that the donor of a general power would manifest an in-

tent that, in the exercise of the power, the donee should not make partial appointments, create future interests, make appointments with conditions, charges or restraints or establish trusts. If, however, such an intent is manifested it is without effect."

Such a rule is obviously one of substance rather than of construction, and as such would seem to require legislative sanction before it could be applied. Especially is this so when there is no public policy which would require the court to adopt such a rule of substantive law.

It may be noted that the reason given in the comment in support of the *Restatement* rule is but a reflection of the judicial reasoning behind the many decisions which have construed powers as permitting the appointment of lesser interests where each donee was given the power to appoint an absolute interest, even though it had been urged in such cases that only absolute interests could be appointed under the language of the powers involved. It should be noted, however, that the courts used the reason as a basis for construing a power as not restricting the donee to the appointment of an absolute interest and they did not use it as the basis for adopting a rule of substantive law prohibiting the donor from creating such a power. See *Harker v. Reilly*, (1871) 4 *Del.Ch.* 72; *Massey v. Guaranty Trust Co., supra; Regents of University System v. Trust Co. of Georgia* (1938) 186 *Ga.* 498, 198 *S.E.* 345, 121 *A.L.R.* 125.

While I have been unable to find any decision in Delaware where a power has been construed to permit the appointment of an absolute interest only, nevertheless, the validity of such a power was recognized by implication in *Harker v. Reilly, supra,* and *Equitable Trust Company v. Foulke, et al., supra,* although the powers involved were construed as permitting appointments in trust. Moreover, it has long been recognized generally that such a power could be created. See 1 *Sugden on Powers,* *494. I conclude, therefore, that our law permits a person to create a power interest in the property subject to the power.

Having concluded that a party may create a power which can be exercised only by an absolute appointment, I must now determine what rule of construction will be applied in deciding whether the particular power here involved permitted the appointment of an absolute interest only, or some lesser interest. The trend in this phase of the law has undoubtedly been towards construing such powers to allow the donee, whenever possible, to appoint an interest less than created by the power itself. Consequently, it is not surprising to find that there are very few cases where a power has been construed as permitting the appointment of an absolute interest only. As a practical matter, it might almost be said that there is a presumption in favor of the donee's right to appoint some interest less than that provided for by a power. I believe Chancellor Harrington in *Equitable Trust Company v. Foulke, et al., supra,* established the following rule of construction as being applicable in such a situation: Where a power authorizes the appointment of an absolute interest, the appointee is authorized to appoint some lesser interest unless the appointment of a lesser interest is either "expressly" or "impliedly prohibited" by the power itself. Obviously, this rule does not go as far as the *Restatement* rule.

It should be noted that in the *Foulke* case the power involved was special as to appointees, yet the court there decided that the power did not limit the donee to an absolute appointment, but permitted an appointment in trust. Thus, we have in effect a holding that a power otherwise general does not "impliedly" prohibit the appointment of an interest less than absolute merely because it is special as to appointees. Accord: *Wilmington Trust Co. v. Wilmington Trust Co., supra.* This is important because the cases I have been able to find where a power has been construed to permit the appointment of an absolute interest only involved powers which were special as to appointees, and each court placed great reliance upon the fact that the power was special as to appointees. E. g., see *Hooper v. Hooper,* (1909) 203

*Mass.* 50, 89 *N.E.* 161; *In re Kennedy's Will, supra; Myers v. Safe Deposit & Trust Co. of Baltimore,* (1891) 73 *Md.* 413, 21 *A.* 58; *Appeal of Pepper,* (1888) 120 *Pa.* 235, 13 *A.* 929.

Having in mind these legal principles, let us examine the power created by Item 3 of the will of Elizabeth B. McComb.

Item 3 of the will places no limitation as to the persons to be appointed by the donee of the power. The power involved is, therefore, general as to appointees. The significance of this fact cannot be overemphasized because in *Equitable Trust Company v. Foulke, et al., supra,* and *Wilmington Trust Co. v. Wilmington Trust Co., supra,* the Chancellor in effect held that a power special as to appointees did not thereby impliedly prohibit the apointment of less than an absolute interest. The power here being general as to appointees, a fortiori, the power authorizing the appointment of an absolute interest does not impliedly prohibit the appointment of a lesser interest.

The power here involved creating the right to appoint an absolute interest does not "expressly" prohibit the appointment of a lesser interest, and as heretofore stated it is not impliedly prohibited by any language of the power dealing with appointees.

Thus, under the rule in *Equitable Trust Company, v. Foulke, et al., supra,* the appointment here is valid unless the language in the power directing the trustees to convey the farm "in fee simple and to deliver all of said personal property connected therewith" to the persons appointed by James in his will constitutes an implied prohibition against the appointment of less than an absolute interest. Using "fee simple" as the equivalent of an absolute interest in both realty and personalty, is the term as used in the power equivalent to language of limitation or of purchase? Haida A. Dunham contends it is in operation language of limita-

tion, while the other defendants contend it is language of purchase.

I shall not indulge in any elaborate discussion of rules of construction in an attempt to discover the assumed intent of the testatrix as expressed in her will because often such rules amount to tangible rationalizations of predetermined results. Rather, I believe the result must be arrived at by deciding whether it is a desirable policy to assume that a donor of a power intended to create it without limitation as to the interest to be appointed unless the language of the power or other provisions of the instrument involved compel a contrary construction. Tested by this approach, which I deem desirable, I believe the use of the words "fee simple" are as consistent with a holding that they are in effect language of purchase as with the conclusion that they are language of limitation. In fact, it has been held that such language is "an expression of his intention to broaden and strengthen the unlimited power given to the donee." *In re Hart's Will*, (1941) 262 *App. Div.* 190, 28 *N.Y.S.2d* 781, 784. See also *Regents of University System v. Trust Co. of Georgia, supra*. Such being the case, I am not compelled by any language in the power to conclude that the testatrix intended to create a power which could be exercised only by the appointment of an absolute interest. Nor do any other provisions of the will impliedly require such a construction.

While the cases have not articulated in so many words the test which I have here applied, I believe they have applied it in a practical way in construing the particular powers before them. *E. g., In re McClellan's Estate*, (1908) 221 *Pa.* 261, 70 *A.* 737; *Appeal of Appleton*, (1890) 136 *Pa.* 354, 20 *A.* 521, 11 *L.R.A.* 85, 20 *Am.St. Rep.* 925; *Butler v. Huestis*, (1873) 68 *Ill.* 594, 18 *Am.Rep.* 589; *Bunnell's Estate*, (1919) 28 *Pa. Dist.* 542; *Regents of University System v. Trust Co. of Georgia, supra; Massey v. Guaranty Trust Co., supra*.

While many of the cited cases seize upon such phrases

as "in such manner," "in such shares," "upon such conditions," "subject to such limitations" appearing in the powers involved, nevertheless, I think it clear that the existence of some such phrase merely gives additional support to the conclusion independently sustainable that the existence of the right to appoint an absolute interest includes the right to appoint a lesser interest. Certainly this is true in Delaware, where the right to appoint such a lesser interest exists unless expressly or impliedly prohibited by the power. Moreover, the use of the words "fee simple," as heretofore stated, is at least equally consistent with a desire to make certain that the donee could appoint an absolute interest—though it is doubtful whether such words were even needed for that purpose.

It is urged that to construe the present power as permitting an appointment in trust "would be, in effect, to say that it is not only necessary for a testator to say what he desires done with his property but also that he must state what he does not desire done with his property."

I take it that there is a very substantial answer to this assertion. It is not unusual to find in other fields of law rules of construction which require the most explicit language before a court will conclude that a particular result was intended. It is a necessary consequence of the rule of construction here adopted that a particular result will follow unless it is excluded expressly or by necessary implication. The rule of construction adopted is nothing more than the solidification of a policy with regard to powers which has been deemed to be desirable. Certainly, at least as a rule of construction where the power is general as to appointees, as it is here, it has a clear basis in reason because the donor of a power who shows no interest in the beneficiaries of his bounty cannot be assumed to care particularly what interest those faceless beings will take.

Based on my interpretation of the controlling prece-

dents, as well as the policy governing the construction of powers, I conclude that the power created by Item 3 of the will of Elizabeth B. McComb was not special in the sense that only an absolute interest could be appointed. Having so concluded with the result that the power is general both as to estate and appointees, the well established principle that the lesser right is included in the greater becomes operative and validates the appointment in trust by James C. Mc-Comb. Consequently, the contention of Haida A. Dunham both individually and as administratrix that the power here involved was not effectually executed must be rejected.

A decree acordingly will be advised.