Sara C. DICKINSON, Petitioner,

v.

WILMINGTON TRUST COMPANY, a Delaware Corporation, Trustee Under Last Will and Testament of William Carroll Coyne Dated October 15, 1930 and Trust Agreement With William Carroll Coyne Dated December 5, 1933, Respondent.

No. 15605.

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 10, 1998.
Decided: Feb. 5, 1999.

Robert W. Crowe, and Michael D. De-Baecke, of Cooch and Taylor, Wilmington, for Petitioner.

Johannes R. Krahmer, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Respondent.

OPINION

LAMB, Vice Chancellor.

## I. INTRODUCTION

Pending are cross-motions for summary judgment requesting a determination of the following legal question: are the testamentary powers of appointment contained in certain spendthrift trusts of which petitioner is the lifetime income beneficiary "general as to appointees", that is, may petitioner, by her Last Will and Testament, appoint the principal and any undistributed income of those trusts to her creditors, her estate or the creditors of her estate? For the reasons explained, *infra,* I answer the question in the affirmative.

### A. Factual History

Petitioner, Sara C. Dickinson ("Ms. Dickinson"), is the income beneficiary of two trusts created by her late father, W. Carroll Coyne ("Mr. Coyne"); a testamentary trust under his Last Will and Testament ("Will") and an inter vivos trust under a Trust Agreement ("Trust Agreement"). Respondent, Wilmington Trust Company ("WTC"), is the trustee of both trusts.

The terms of the trusts provide that Ms. Dickinson is to receive the income from the trusts for the duration of her lifetime. Both trusts also provide that she, as income beneficiary, is given the testamentary power to appoint the principal and undistributed income of each such trust, free of trust, *to such person or persons* as she may designate ("Appointment Provisions"). Both trusts contain spendthrift provisions, which prohibit Ms. Dickinson from anticipating, alienating or otherwise assigning the income or principal of the trusts, and protect the trust funds from "any legal process, bankruptcy proceeding[ ] or the interference or control of creditors or others" ("Spendthrift Provisions").

For purposes of estate planning, on November 7, 1996, Ms. Dickinson requested advice from her trustee, WTC, regarding whether her creditors, her estate or the creditors of her estate are permissible appointees under the Appointment Provisions in her trusts. On November 18, 1996, WTC informed Ms. Dickinson that neither her creditors, her estate or the creditors of her estate were permissible appointees, and that, should she appoint any of these parties, WTC would not honor the appointment. This correspondence prompted Ms. Dickinson to file a petition with this Court requesting a determination that she has the authority under the Appointment Provisions to appoint the principal and any undistributed income of the trusts to herself, her creditors, her estate or the creditors of her estate.

Both parties agree that the terms of the Will and Trust Agreement provide the answer to this question and that the matter properly may be resolved on the cross-motions for summary judgment filed by the parties. *See* Ch. Ct. R. 56; *Weymouth v. Wilmington Trust Co.,* Del. Ch., C.A. No. 11435, Jacobs, V.C., 1991 WL 148808, mem. op. at *3 (Aug. 2, 1991) ("Both parties agree that this case is appropriately resolved on a motion for summary judgment, because no genuine issue of material fact exists and judgment can be rendered as a matter of law"), *aff'd,* Del.Supr., 608 A.2d 731 (1992).

### B. Pertinent Provisions of the Will and Trust Agreement

The Appointment Provision of the Will, Article Third, states, in pertinent part:

In the event of the death of any child of mine for whom a share of this my residuary estate shall then be held in trust hereunder, I direct my said Trustee to

assign, transfer, convey and deliver, free from this trust, the share of the child so dying, principal and undistributed income thereof, if any, unto such person or persons, and in such manner and amounts, as the child so dying shall by his or her Last Will and Testament appoint; or in default of any such appointment, then unto the issue per stirpes of the child so dying; or if the child so dying shall have failed to make any appointment as hereinbefore provided, and shall have left no issue him or her surviving, then I direct my said Trustee to distribute the share of the child so dying equally among the other shares which may be held in trust for any of my children or which may have been distributed to the appointees or the issue per stirpes of any of my deceased children.

An analogous provision is found in the Trust Agreement, Article II, which states:

In the event of the death of any of Trustor's issue for whom a share of the trust fund shall then be held in trust hereunder, Trustee shall forthwith assign, transfer, convey and deliver such share, principal and undistributed income thereof, if any, free from this trust, unto such person or persons and in such manner and amounts as the issue so dying shall have appointed by his or her Last Will and Testament; or in default of any such appointment, then unto the descendants per stirpes of the issue so dying, ...

The Spendthrift Provision in the Will, Article Eleventh, states:

The interest of any beneficiary hereunder, either as to principal or income, shall not be anticipated, alienated or in any other matter assigned by such beneficiary and shall not be subject to any legal process, bankruptcy proceedings or the interference or control of creditors or others.

The Spendthrift Provision in the Trust Agreement, Article III, is similar, and states:

The interest of any beneficiary hereunder, either as to income or principal of the trust fund, shall not be anticipated, alienated, or in any other manner assigned or transferred by such beneficiary, nor shall the same be subject to any legal process, bankruptcy proceedings or the interference or control of creditors or others.

## II. DISCUSSION

### A. Powers of Appointment

A power of appointment "is authority, other than as an incident of the beneficial ownership of property, to designate recipients of beneficial interests in property." *Restatement (Second) of Property* § 11.1 (1986) [hereinafter *Restatement* ]. A power of appointment that is construed as including the authority to appoint to any one or more of the donee, the donee's creditors, the donees's estate or the creditors of the donee's estate is defined as a general power of appointment. *See Morgan v. Comm'r,* 309 U.S. 78, 81, 60 S.Ct. 424, 84 L.Ed. 585 (1940) (noting that a general power of appointment is one where "the donee may appoint to anyone, including his own estate or his creditors, thus having full dominion over the property as if he owned it"); *Restatement,* § 11.4(1) (power of appointment that allows exercise in favor of any one or more of: donee, donee's creditors, donee's estate or creditors of donee's estate is a general power). A power of appointment that does not include the authority to appoint any of these persons or categories of persons is a non-general power of appointment. *See Restatement,* § 11.4(1–2). More precisely, such powers are "general" or "non-general" (or by some authority "specific") as to appointees. *Equitable Trust Co. v. James,* Del. Ch., 47 A.2d 303, 306 (1946). Although not relevant for the purposes of this opinion, powers can also be categorized in relation to the quantum of the estate to be appointed as either "general as to estate" or "special as to estate." *Id.*

The classification of powers of appointment as general or non-general (as to appointees) has particular pertinence in the area of federal estate taxation. Pursuant to the Internal Revenue Code, if the Appointment Provisions are found to be general (as to appointees) and are exercised by Ms. Dickinson,[1] then the property of the trusts at the time of her death will be subject to inclusion in her gross estate for tax purposes. *See* 26 U.S.C. §§ 2041(a), 2514(c). Neither the Will nor the Trust Agreement contain any provision pertaining to the payment of estate taxes. Thus, Ms. Dickinson, in order to "properly plan the disposition of her estate" and "the possible payment of taxes and other expenses occasioned by the inclusion of the trust property in her estate," asks this Court to determine whether the Appointment Provisions create "general" or "non-general" powers of appointment.[2]

## B. The Parties' Arguments Regarding the Scope of Ms. Dickinson's Powers of Appointment

The Appointment Provisions grant Ms. Dickinson the authority to appoint any undistributed income and principal, by testamentary disposition, to *such person or persons* of her choice. This italicized language is not defined in or expressly limited by the trust instruments.

Ms. Dickinson argues that, in the absence of limiting language, *such person or persons* should be interpreted broadly as including the authority to appoint her creditors, her estate or the creditors of her estate. As support for her argument, she cites the *Restatement*, Section 12.2, which states:

> The scope of the donee's authority as to appointees and the time and manner of appointment is unlimited except to the extent the donor effectively manifests an intent to impose limits.

Further supporting authority is offered by citation to Illustrations 1 and 2 to Section 12.2, which state:

1. O by will transfers property to T in trust. T is directed to pay the net income to W (O's wife) for life. In addition, T is directed "to distribute the trust property to such person or persons as W may appoint." W has a general power of appointment under which she can appoint to herself, her creditors, her estate, and creditors of her estate.

and,

2. Same facts as Illustration 1 except that O's will contains the following provision: "The interest of each beneficiary in the income or principal of a trust hereunder shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to attachment or susceptible of anticipation or alienation." The presence of this spendthrift provision prevents any transfer by W of her owned life interest under the trust but does not prevent W from appointing trust property subject to her life interest to her creditors or to creditors of her estate or to anyone else, including her-

---

1. Because the Appointment Powers were both created before October 21, 1942, if they are found to be "general" but are not exercised by her will, then the trust property subject to these powers will not be included in Ms. Dickinson's gross estate for tax purposes. *See* 26 U.S.C. § 2041(a). I note that, in the case of general powers of appointment created after October 21, 1942, property subject to such a power is includable in the federal gross tax estate of the holder without regard to the exercise of such power. *Id.*

2. The petition, but not the motion for summary judgment, sought a determination that Ms. Dickinson could exercise the Appointment Provisions in favor of herself. I do not reach the issue here but note that, in *Weymouth,* the court held that the holder of a testamentary power of appointment was unable to appoint in favor of herself due to a provision in the trust requiring that appointees be alive at the time the appointment became effective. Del.Ch., C.A. No. 11435, mem. op. at *4.

self. W has a general power of appointment.

Ms. Dickinson contends that the examples set out in Illustrations 1 and 2 evidence that the pertinent language in the instant case, which is exactly the same as that in the Illustrations, is properly construed as creating general powers of appointment, and thus allows their exercise in favor of her creditors, estate and/or the creditors of her estate.[3]

WTC contends that, notwithstanding the unlimited description of possible appointees in the Will and Trust Agreement, a reading of those instruments in their entirety, and not as separate provisions, evidences Mr. Coyne's true intent to prohibit an appointment by Ms. Dickinson to her creditors, estate or the creditors of her estate. WTC supports its argument by reference to several provisions in the trust instruments that it argues are "numerous indicia" of Mr. Coyne's intent, especially the Spendthrift Provisions.

### C. The Standard for Construing the Intent of a Donor of Powers of Appointment

█ "In construing trust agreements, the controlling factor in determining the scope of a power of appointment is the intent of the donor." *Weymouth*, Del. Ch., C.A. No. 11435, mem. op. at *2 (citing *In re Buck Trust*, Del. Ch., 301 A.2d 328, 331 (1973)), *aff'd*, Del.Supr., 608 A.2d 731 (1992); *accord Dutra De Amorim v. Norment*, Del.Supr., 460 A.2d 511, 514 (1983) ("The cardinal rule of law regarding construction of trust provisions is that the settlor's intent controls the interpretation of the language"). "The language of the *entire* instrument, rather than any isolated Article, will be considered in determining

the Settlor's intent." *J.P. Morgan Del. v. Henley–Paradis*, Del. Ch., C.A. No. 12724, Chandler, V.C., 1993 WL 6866, mem op. at *3 (Jan. 13, 1993).

### D. Analysis of Trust Instruments

█ A review of the trust instruments in this matter persuades me that Mr. Coyne did not intend for Ms. Dickinson's appointment power to be limited in any way. Consequently, I find that the Appointment Provisions are general powers of appointment (as to appointees) and thus, may be exercised in favor of such person or persons as Ms. Dickinson may choose, including, but not limited to, her creditors, estate or the creditors of her estate.

█ Looking only to the language of the Appointment Provisions, the general nature of the powers thus created is clear. In the pertinent provision of the Will, Mr. Coyne directed that, upon Ms. Dickinson's death, his trustees shall deliver the principal and undistributed income of the testamentary trust unto "such person or persons, and in such manner and amounts, as [Ms. Dickinson] shall by [her] Last Will and Testament appoint." The language of the Trust Agreement varies immaterially. Such language, if not limited or "cut down" by some other provision, creates a general, not a non-general or special, power. *Equitable Trust Co.*, Del. Ch., 47 A.2d at 308 (power to appoint to "such person or persons" as holder of power may direct is a general power as to appointees); *United States Trust Co. of Newark v. Montclair Trust Co.*, N.J. Ch., 33 A.2d 901, 904 (same); *Restatement*, § 12.2(1) and cmt. a.[4]

█ The question then is whether other provisions found in the Will or the Trust Agreement evidence a contrary in-

---

3. Ms. Dickinson also cites *Equitable Trust Co.*, Del. Ch., 47 A.2d at 310 (language "such person or persons" creates a general power of appointment); *United States Trust Co. of Newark v. Montclair Trust Co.*, N.J. Ch., 33 A.2d 901, 904 (1943) (same).

4. But see *Balls v. Dampman*, 69 Md. 390, 16 A. 16 (1888), and its progeny for the extreme minority view that a donee only holds a general testamentary power of appointment where the donor has explicitly authorized appointment in favor of the donee's creditors or estate.

tent on the part of Mr. Coyne. Most importantly, do the Spendthrift Provisions by necessary implication limit the scope of the Appointment Provisions to preclude an appointment in favor of any one or more of Ms. Dickinson's creditors, her estate or the creditors of her estate? The answer must be "no" because the inclusion of a spendthrift provision in a trust is not logically inconsistent with the intention to give the beneficiary of the trust a testamentary power to appoint the property to any person of her choosing. The spendthrift provision will still serve its purpose of preserving the interest of the beneficiary in the income (and principal) of the trust during her lifetime. This is clearly the position taken in the *Restatement*, which states:

> If the donee's owned interest under a trust is subject to a spendthrift provision, this fact does not convert what otherwise would be a general power of appointment under which the donee could appoint to the donee's creditors into a non-general power under which no appointment could be made to the donee's creditors.

The *Restatement* provision is not inconsistent with Delaware law, and I adopt it.[5]

Of course, the scope of a power is defined by and, in appropriate circumstances, limited by the expressed intent of the donor of the power. As in all cases requiring an interpretation of intent, it is possible to imagine circumstances in which the language of a document creating the power will manifest sufficiently the donor's intention to limit a power otherwise appearing to be unlimited in scope. Here, I hold only that the inclusion of the Spendthrift Provisions does not sufficiently manifest such an intention.

■ WTC relies on several other provisions in the Will and Trust Agreement that, it contends, taken together with the Spendthrift Provisions, sufficiently manifest Mr. Coyne's intention to cut down the Appointment Provisions to prevent their exercise in the manner contended for by Ms. Dickinson. WTC points to what it characterizes as the "strict" principal invasion provisions, the testamentary appointment restrictions and the absence of tax payment provisions found in both the Will and Trust Agreement.[1] I find none of these provisions, singly or together, to be inconsistent with the grant of general powers of appointment.[6]

### III.  CONCLUSION

For all of the foregoing reasons, I find that Ms. Dickinson was granted general

---

5.  The rule in Delaware at common law is that property subject to a power of appointment, even one general as to appointees, is not part of the estate of the person possessing the power. *Highfield v.. Delaware Trust Co.*, Del. Supr., 152 A. 124, 127 (1930). Moreover, that case suggests (but does not expressly decide) that creditors of the holder of even a general power of appointment have no right, upon the holder's death, to recover from the property subject to the appointment, even if the estate is otherwise insufficient to satisfy their claims. In this regard, I also note the existence of authority in other jurisdictions, that the holder of a testamentary power cannot effectively contract to appoint by will in favor of any particular person and that a creditor who makes such a bargain and is disappointed has, "by virtue of his contract, no equitable lien or other interest" in the property subject to the power. *United States Trust Co. of Newark*, N.J. Ch., 33 A.2d at 903.

6.  First, the so called "strict" invasion provisions are not so strict, allowing, as they do, WTC the discretion to invade principal to the extent income distributions are insufficient to pay for necessities related to both Ms. Dickinson and her dependents' "support, maintenance, benefit, and/or education." A stricter provision would be one allowing no invasion or only one limited in amount. Second, that the Appointment Provisions can be exercised only by will, and not by *inter vivos* deed, is merely consistent with the inclusion of the Spendthrift Provisions in the trusts and is not suggestive of any greater intention on the part of the donor to restrict the permissible class of appointees. Finally, I find nothing in either the Will or Trust Agreement that leads me to the conclusion that Mr. Coyne intentionally omitted provisions relating to the payment of estate taxes as part of an effort to limit the permissible class of appointees.

powers of appointment, thus authorizing appointment in favor of her creditors, her estate or the creditors of her estate. Therefore, if she chooses to appoint to any of the above-mentioned, WTC must honor the appointment. IT IS SO ORDERED.